51 F.3d 269
 1995 O.S.H.D. (CCH) P 30,711
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
David Lee GOODE, Defendant-Appellant.
 No. 95-5003.
 United States Court of Appeals, Fourth Circuit.
 Argued: February 3, 1995.
Decided: March 15, 1995.
 
 ARGUED: Carl E. McAfee, McAfee, Bledsoe & Associates, P.C., Norton, VA, for Appellant. Thomas Jack Bondurant, Jr., Assistant United States Attorney, Roanoke, VA, for Appellee. ON BRIEF: Robert P. Crouch, Jr., United States Attorney, Roanoke, VA, for Appellee.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 On this appeal, David Lee Goode challenges the sentence of 12 months incarceration that he received after pleading guilty to violating federal mine safety standards, in violation of 30 U.S.C. Sec. 820(c), and to making false statements to a government agency, in violation of 18 U.S.C. Sec. 1001. He contends that the district court erred in sentencing him under U.S.S.G. Sec. 2F1.1(b)(4). We affirm.
 
 
 2
 * On December 7, 1992, eight miners were killed and one injured as the result of a methane explosion at Southmountain Coal Mine # 3 in Wise County, Virginia, apparently caused by the open flame of a miner's butane cigarette lighter. A subsequent investigation revealed a long-standing pattern of violations of mandatory safety standards at the mine that led to a buildup of methane gas and involved falsification of records to conceal the violations. Southmountain Coal Company and several of its agents were charged with these violations under 30 U.S.C. Sec. 820 and 18 U.S.C. Sec. 1001.
 
 
 3
 Apparently also as a result of the explosion, Goode was charged in a separate indictment. Goode worked for Southmountain Coal Company from June 1990 to December 1992. He had served as Evening Shift Foreman in Southmountain Coal Mine # 3 from November 27, 1991, to June 8, 1992. In order to become a foreman, Goode had to demonstrate a high level of knowledge regarding mandatory safety standards. Although he was not a supervisor at the time of the explosion and was not responsible for the particular incident that caused the explosion, Goode had previously allowed smoking materials to be taken into the underground portion of the mine, and he had allowed miners to smoke underground while he was foreman.
 
 
 4
 In a four-count indictment, Goode was charged with several offenses related to his conduct while serving as shift foreman and with perjury in his testimony before the grand jury. Pursuant to a plea agreement, Goode pled guilty to knowingly authorizing and carrying out the violation of a mandatory safety standard, namely the failure
 
 
 5
 to institute an adequate program to insure that any person entering the underground area of the mine does not carry smoking materials, matches, or lighters, as required by 30 C.F.R. Sec. 75.1702,[1] in violation of 30 U.S.C. Sec. 820(c) (Count One). He also pled guilty to knowingly and willfully concealing and covering up by scheme and device a material fact in violation of 18 U.S.C. Sec. 1001 by falsifying the Searches for Smokers' Articles Weekly Examination Record Book and authorizing others and himself to carry smoking materials, matches, and lighters and to smoke underground in violation of 30 C.F.R. Sec. 75.1702 (Count Three).
 
 
 6
 Goode's presentence report not only explained Goode's conduct, but also discussed at length the circumstances of the December 1992 explosion, the deaths of the miners, and the indictment of those Southmountain agents held responsible for the explosion, all of which occurred long after Goode's offenses were complete. Goode objected to the inclusion in the report and the court's consideration of these fatalities and of the ensuing indictment of the other agents, arguing that any facts relative to that indictment were not relevant to his case.
 
 
 7
 The district court overruled the objections, and sentenced Goode according to the presentence report to two twelve-month terms of incarceration to be served concurrently.
 
 
 8
 This appeal followed.
 
 II
 
 9
 Goode challenges the district court's use of U.S.S.G. Sec. 2F1.1(b)(4) to increase his base offense level. U.S.S.G. Sec. 2F1.1(b) provides that the base offense level shall be level 6 for an offense involving fraud and deceit such as a violation of 18 U.S.C. Sec. 1001. Subsection (4) provides further that "[i]f the offense involved the conscious or reckless risk of serious bodily injury, increase by 2 levels. If the resulting offense level is less than level 13, increase to level 13." U.S.S.G. Sec. 2F1.1(b)(4). The district court applied this guideline to arrive at a base offense level of 13 which, considering Goode's criminal history category of 1, has a corresponding guideline range of 12 to 18 months incarceration. The district court took into account evidence of Goode's low-level management position and of his efforts to comply with safety standards in sentencing him to the low end of the guidelines' sentencing range.
 
 
 10
 Goode first claims that the decision to use U.S.S.G. Sec. 2F1.1(b)(4) was itself improper because, in the absence of any stipulation between Goode and the government regarding which sentencing guideline should apply, the probation officer adopted the guideline to which the parties in the case involving the December 1992 explosion had stipulated in their plea agreement.[2] This argument is meritless. Regardless of what inspired the probation officer to recommend the guideline as the applicable one, if it was indeed the proper guideline, then the district court acted properly in applying it. Goode presented no rational explanation and cited no law for the proposition that the guideline was not the proper one, either during his sentencing hearing or on appeal, but merely repetitively insisted that the motive in choosing it was improper. Transcript of Sentencing Hearing at 4-7, Appellant's Br. at 5-7.
 
 
 11
 In fact, Section 2F1.1(b)(4) was the proper guideline for both counts. As to Count Three, section 2F1.1 governs offenses involving fraud and deceit, explicitly including violations of 18 U.S.C. Sec. 1001. As to Count One, there is no specific guideline that governs a violation of 30 U.S.C. Sec. 820(c). However, because Count One involved substantially the same harm as did Count Three within the definition of U.S.S.G. Sec. 3D1.2, they are to be grouped together for sentencing under section 2F1.1(b)(4). U.S.S.G. Sec. 3D1.2. Thus, the district court properly applied U.S.S.G. Sec. 2F1.1(b)(4) to both counts.
 
 
 12
 Goode next argues that U.S.S.G. Sec. 2F1.1(b)(4) was not properly applied to him because his offense did not involve a "conscious or reckless risk of serious bodily injury." The presentence report stated that
 
 
 13
 Specific Offense Characteristic: This offense involved the conscious or reckless risk of bodily injury in that on December 7, 1992, eight miners were killed and one was injured as the result of an explosion at Southmountain Coal Mine # 3. Pursuant to U.S.S.G. Sec. 2F1.1(b)(4), the offense level is increased by two levels, or if the resulting offense level is less than level 13, it is increased to level 13.
 
 
 14
 Presentence Report at p 42. Goode argues that the presentence report recommended an increase in his base offense level on the basis of, and thereby held him responsible for, fatalities for which he was not responsible. His logic seems to be that, if no injuries or fatalities occurred as the direct result of his violations, his offense could not have involved the conscious or reckless risk of serious bodily injury. This theory ignores the fact that a risk need not actually come to fruition to be a real risk. The guideline asks if there was a risk of serious bodily injury, not whether serious bodily injury actually directly resulted from the defendant's behavior. The presentence report's reference to the fatalities was not necessary to his sentencing, but was relevant to demonstrate the seriousness of the risk that Goode assumed when he allowed smoking underground.
 
 
 15
 When reviewing a sentence imposed under the sentencing guidelines, we accept the district court's findings of fact unless clearly erroneous and give due deference to the district court's application of the guidelines to the facts of the case. 18 U.S.C. Sec. 3742(e); United States v. Sheffer, 896 F.2d 842, 846 (4th Cir.1990). In the present case, we conclude that the sentence was not imposed as the result of an incorrect application of the guidelines.
 
 
 16
 The district court stated that the information about the fatalities did not affect the guidelines range. Transcript at 3. The court found that Goode recklessly had created a risk of serious bodily injury by violating the safety standards despite his knowledge of the danger involved in allowing smoking in the methane-tainted atmosphere of the mine, explaining that "the fact that no deaths directly resulted from the conduct doesn't make it any less reckless." Transcript at 10. This finding is not clearly erroneous, being supported by substantial evidence. As foreman, Goode knew of the safety standards which he violated, and was aware of the dangers of smoking in the mine, having personally recorded high concentrations of methane gas on at least three different occasions. Nevertheless, he failed to make the required inspections, he allowed his fellow miners to take smoking materials into the mine and to smoke in the mine, and he falsified records to conceal these violations, thereby impeding inspectors from being alerted to the violations and acting to prevent an explosion.
 
 AFFIRMED
 
 
 [1]
 30 C.F.R. Sec. 75.1702 provides that:
 No person shall smoke, carry smoking materials, matches, or lighters underground.... The operator shall institute a program ... to insure that any person entering the underground area of the mine does not carry smoking materials, matches, or lighters.
 
 
 [2]
 The specific paragraph of the presentence report to which Goode objects reads as follows:
 In the written plea agreement, the United States did not stipulate the applicable guideline for the counts of conviction, however in the related indictment # 94-00002-A, the United States stipulated the applicable guideline for the counts of conviction is U.S.S.G. Sec. 2F1.1(4). As this defendant is convicted of the same conduct, the same guideline would apply in this case. For the purpose of calculating the offense level, Counts One and Three will be grouped together in that both counts involved the same harm pursuant to U.S.S.G. Sec. 3D1.2.
 Presentence Report at p 39.