**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 95-5594

DARLENE TURNER,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 95-5595

DENNIS TURNER,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Virginia, at Big Stone Gap.
Glen M. Williams, Senior District Judge.
(CR-94-49-B)

Argued: September 27, 1996

Decided: December 26, 1996

Before MURNAGHAN, Circuit Judge, SMITH, United States
District Judge for the Eastern District of Virginia, sitting by
designation, and MICHAEL, Senior United States District Judge for
the Western District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Smith wrote the opinion, in
which Judge Murnaghan and Senior Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Robert Maurice Galumbeck, DUDLEY, GALUMBECK & SIMMONS, Tazewell, Virginia, for Appellants. Steven Randall Remseyer, Assistant United States Attorney, Abingdon, Virginia, for Appellee. **ON BRIEF:** Robert P. Crouch, Jr., United States Attorney, Abingdon, Virginia, for Appellee.

_____

**OPINION**

SMITH, District Judge:

Darlene Turner, owner, President, and mine operator of Bruce Coal Company, and Dennis Turner, her husband and also mine operator at Bruce Coal, were both sentenced to imprisonment for violating 18 U.S.C. § 371 and 30 U.S.C. § 820(f) of the Federal Mine Safety and Health Act of 1977 ("Act"). Under the Act, each miner must receive at least eight hours of annual refresher training regarding mine health and safety. 30 U.S.C. § 825(a)(3); 30 C.F.R.§§ 48.8, 48.28. The training is mine-specific, and is geared to the roof control plans, ventilation plans, and safety devices at each particular mine. 30 C.F.R. §§ 48.8, 48.28. Upon completion of the training, the mine operator must certify on Mine Safety and Health Administration form 5000-23 ("MSHA form 5000-23"), the form approved by the Secretary of Labor, that each miner has received this annual training. 30 U.S.C. § 825(c); 30 C.F.R. §§ 48.9, 48.29. The Act requires each mine operator to maintain this form and make it available for inspection at the mine site. Id. In an attempt to circumvent these requirements of the Act, the Turners paid a certified mine safety instructor, Donald Kendrick, to state falsely on several MSHA 5000-23 forms that he provided safety training to miners working for Bruce Coal Company, in violation of § 371 and § 820(f) of the Act.

On appeal, Darlene Turner contends that she is not guilty because the MSHA 5000-23 forms upon which Kendrick made these false statements were not proper under the Act, as the forms did not have a place for the mine operator to certify personally that the training was given. Moreover, even if the forms at issue were proper, Ms. Tur-

2

ner argues that she did not violate the Act because she did not personally sign the forms, and Kendrick was not acting as her agent when he made the false certifications. She maintains that the United States did not present sufficient evidence at trial to prove beyond a reasonable doubt that she violated 18 U.S.C. § 371 and 30 U.S.C. § 820(f).

In addition, with regard to their sentences, the Turners argue on appeal that the district court erred in its determination that: (1) the Turners' offenses involved the conscious or reckless risk of serious bodily injury, pursuant to United States Sentencing Commission, Guidelines Manual, § 2F1.1(b)(4)(A) (Nov. 1995) ("USSG"); (2) Dennis Turner was an organizer of a criminal activity involving five or more participants, pursuant to USSG § 3B1.1; and (3) the Turners abused a position of public or private trust in a manner that significantly facilitated the commission of the offense, pursuant to USSG § 3B1.3. For the reasons stated below, we affirm.

I.

Darlene Turner was the owner, President, and operator of Bruce Coal Company, which operated an underground coal mine in Dickenson County, Virginia. Dennis Turner, Darlene's husband, also worked for Bruce Coal as a mine operator. He "volunteered" his time at the mine, electing not to receive a salary because he owed money to the Internal Revenue Service. In March, 1993, Dennis Turner asked Donald Kendrick, a certified mine safety instructor, to fill out training forms for the miners who worked at Bruce Coal without actually giving them the eight hours of health and safety training required by the Act. Mr. Turner explained that he could not afford to pay the miners for the day of training, and agreed to pay Kendrick two hundred dollars per form to certify falsely that the training was given. On each blank MSHA form 5000-23, Kendrick falsely certified that he trained the Bruce Coal miners at the Turners' house on March 20, 1993. Kendrick never gave the miners any training.

After Kendrick signed the blank MSHA 5000-23 forms, Darlene Turner gave them to Tammy Mullins, an employee at Bruce Coal, and instructed her to fill in the names and social security numbers of the Bruce Coal miners. Nineteen forms were thus filled out, and ultimately signed by the miners. The miners, none of whom actually

3

received the indicated training and some of whom did not even work for Bruce Coal in March, 1993, signed the forms with the apparent understanding that "[y]ou either signed it, or you went hunting another job."

Dennis Turner, Darlene Turner, and Donald Kendrick were named as co-defendants in a twenty-six count indictment returned on December 8, 1994. Count I charged each of the defendants with violating 18 U.S.C. § 371, by conspiring to make false statements, representations, or certifications on MSHA 5000-23 forms, in violation of 30 U.S.C. § 820(f). Counts II through XXV charged Dennis and Darlene Turner with willfully making, or aiding and abetting the making of, false statements, representations, or certifications on twenty-four MSHA 5000-23 forms, in violation of 30 U.S.C. § 820(f) and 18 U.S.C. § 2. In Count XXVI, Dennis Turner was charged with violating 30 U.S.C. § 820(d) and 18 U.S.C. § 2, for his willful violation of MSHA mandatory health and safety standards regarding roof support in the mine, set forth in 30 C.F.R. § 75.202(a).

Donald Kendrick pled guilty pursuant to a plea agreement on January 24, 1995. On March 20, 1995, Dennis Turner entered a guilty plea, without a plea agreement, to the first twenty-five counts of the indictment. Count XXVI against Mr. Turner was dismissed on motion of the United States at sentencing. Darlene Turner, however, elected to go to trial. The trial commenced on March 20, 1995, and concluded the following day with a jury verdict of guilty on Counts I, VII, XXI, and XXIII, and not guilty as to the remaining counts. Counts VII, XXI, and XXIII involved the false certification on three MSHA 5000-23 forms for miners who were not yet employed at the mine on March 20, 1993, the date the forms indicated the training had occurred. The district court denied Darlene Turner's Motion for Judgment of Acquittal on June 23, 1995.

The sentencing hearing for Dennis and Darlene Turner was held on July 13, 1995. The court (1) enhanced the Turners' base offense levels from six to thirteen levels pursuant to USSG§ 2F1.1(b)(4)(A), because their offenses involved the conscious or reckless risk of serious bodily injury; (2) enhanced Dennis Turner's offense level by four levels pursuant to USSG § 3B1.1, because he was an organizer of a criminal activity involving five or more participants; and (3)

enhanced the Turners' offense levels by two levels pursuant to USSG § 3B1.3, because the court found they abused a position of public or private trust in a manner that significantly facilitated the commission of the offense. The court sentenced Darlene Turner to eighteen (18) months of imprisonment on each count for which she was convicted, Counts I, VII, XXI, and XXIII, with the terms to run concurrently, and a fine of $4,000.00. Dennis Turner was sentenced to twenty-four (24) months of imprisonment on each of Counts I-XXV, with the terms to run concurrently, and a fine of $5,000.00. The court also sentenced the Turners to a three year period of supervised release upon release from imprisonment.

## II.

Darlene Turner maintains that the district court erred in denying her Motion for Judgment of Acquittal because (a) as a matter of law she committed no illegal act, and (b) the United States did not prove beyond a reasonable doubt that she conspired to make, willfully did make, or aided and abetted the making of, false certifications on MSHA 5000-23 forms, in violation of 18 U.S.C. § 371 and 30 U.S.C. 820(f). In reviewing a sufficiency of the evidence challenge to a conviction, the court must view the evidence in the light most favorable to the prosecution and ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Tipton, 90 F.3d 861, 889 (4th Cir. 1996).

## A.

The parties agree that MSHA form 5000-23 is mandated by the statute and the regulations. The Secretary of Labor must promulgate regulations with respect to health and safety training programs under 30 U.S.C. § 825(a). Each miner must receive at least eight hours of annual refresher training regarding mine health and safety pursuant to 30 U.S.C. § 825(a)(3) and 30 C.F.R. §§ 48.8, 48.28. "Upon completion of each training program, each operator shall certify, on a form approved by the Secretary, that the miner has received the specified training . . . ." 30 U.S.C. § 825(c). The regulations further provide that this certification must occur on MSHA form 5000-23:"the operator

5

shall record and certify on MSHA form 5000-23 that the miner has received the specified training." 30 C.F.R. §§ 48.9, 48.29.

Under the statute and regulations, "[f]alse certification by an operator that training was given shall be punishable under section 820(a) and (f) . . . ." 30 U.S.C. § 825(c); 30 C.F.R. §§ 48.9(b), 48.29(b). The penalties provision states that criminal penalties await

> [w]hoever knowingly makes any false statement, representation, or certification in any application, record, report, plan, or other document filed or required to be maintained pursuant to this chapter . . . .

30 U.S.C. § 820(f).

Ms. Turner places the utmost importance on the fact that Counts I, VII, XXI, and XXIII charge her specifically with conspiring to make, and willfully making, or aiding and abetting the making of, false statements, representations, or certifications on MSHA form 5000-23, a form "required to be maintained pursuant to [the Act]," in violation of 18 U.S.C. § 371 and 30 U.S.C.§ 820(f). According to Ms. Turner, she is punishable under these statutes only if the forms at issue conform with the requirements of the Act. By construing very strictly the language of 30 U.S.C. §§ 820(f) and 825(c), as well as 30 C.F.R. §§ 48.9 and 48.29, Ms. Turner contends that the forms falsely signed by Kendrick and the miners were not the proper forms required to be maintained pursuant to the Act.

Each form at issue provides two signature lines, one for the miner, and the other for the "person responsible for training," to certify that the training has in fact been given. The form does not contain any other signature line, and neither Dennis nor Darlene Turner personally signed any of the forms. Under Ms. Turner's strict interpretation of 30 U.S.C. § 825(c), a proper MSHA form 5000-23 must have a place for the operator to certify personally that training has been given,[1] and

_____

[1] The district court stated in its opinion that the forms used here met this requirement. In its June 27, 1995, Memorandum Opinion, the court correctly observed that MSHA form 5000-23 calls for the signature of

6

the form cannot require any other person to so certify. Because the forms at issue provide a signature line for the miner and the instructor, but not the operator, ipso facto the forms are not legally proper under the requirements set forth in 30 U.S.C. § 825(c) and 30 C.F.R. §§ 48.9, 48.29. Consequently, Ms. Turner argues that false certifications on them are not punishable under 30 U.S.C.§ 820(f).

Ms. Turner also relies on a due process argument to support her contention that no one can be punished for the false certifications that did occur. To be valid, a federal regulation must fall within the statutory grant of Congress. If a form does not fall within that grant, because it contains a requirement not properly promulgated, then that form may not serve as a basis for prosecution. No one can be criminally prosecuted for violating a rule or requirement that was not passed by Congress or properly promulgated by an Executive Agency. Accordingly, since no law of Congress nor any promulgated rule provides for any certification other than that of the operator's, Ms. Turner maintains that false certifications by Kendrick and the miners cannot violate the law. To subject these non-operators to criminal liability, or to prosecute an operator based on the false certification of a non-operator, would constitute creating a crime without the approval of Congress.

Characterizing this argument as "absurd," the United States points out that the form at issue here is the one and only"MSHA form 5000-23" used in the industry,[2] that the statute and regulations do authorize

_____

the "person responsible for training," and under the clear language of 30 U.S.C. § 825(a), the person legally responsible for the miner's training is the operator. In this way, the court rejected Ms. Turner's argument that only the certified instructor could sign on this line. Likewise, we reason that the mine operator can sign on this line, either personally or through an agent. See infra at 8-11.

**2** At trial, Stanley Blankenship, a MSHA special investigator, identified the forms signed by Kendrick and the miners to be the forms MSHA requires coal operators to maintain. Although these forms all include the statement "Expires March 31, 1989," Blankenship testified that MSHA still distributes these exact forms to the coal companies: "[t]hey only reprint this form over and over. There's no regulation to us not accepting these forms. . . . [T]here's nothing improper about it."

7

a non-operator to certify on an operator's behalf that the training has been completed, and that a false certification on MSHA form 5000-23 by any person constitutes a violation of 30 U.S.C.§ 820(f). We agree with the United States that the MSHA 5000-23 forms at issue here are proper forms authorized by the Act,**3** and that common sense belies Darlene Turner's contention that only an operator's certification is authorized or punishable.

First, although it is the mine operators who are required to certify under 30 U.S.C. § 825(c) that the training has been completed by the miners, it is generally another person--the instructor--who actually trains each miner. Common sense then compels us to reject Ms. Turner's argument that the Act only authorizes certification by the operator personally, and not through the instructor, as the operator's agent. For example, 30 U.S.C. § 825(a) provides that"[e]ach operator of a coal or other mine shall have a health and safety training program which shall be approved by the Secretary." This statement does not connote that the Secretary of Labor must personally approve every health and safety training program for every mine in the country. Similarly, when 30 U.S.C. § 825(c) provides that"each operator shall certify" that the miner has received the required training, it does not mean the operator must personally sign every form. Instead, by approving the use of MSHA form 5000-23, which provides a signature line for the miner and the person responsible for the training, but not specifically limited to the operator alone, the Secretary implicitly allowed the operator to certify through an agent, the instructor, that the miner has received the required training. Therefore, the Secretary

_____

**3** To the extent Ms. Turner argues that the forms at issue were never actually approved by the Secretary pursuant to 30 U.S.C. § 825(c), that argument is frivolous. First, the Secretary specifically authorizes the use of MSHA form 5000-23 in 30 C.F.R. §§ 48.9 and 48.29, and Ms. Turner admits that the Secretary properly promulgated that regulation. (Appellant's Reply Br. at 4.) Second, the United States points out that the industry uses only one MSHA form 5000-23. The forms are captioned "U.S. Department of Labor, Mine Health and Safety Administration," and labeled "MSHA Form 5000-23." Since this court holds that MSHA form 5000-23 does meet the requirements of §§ 48.9 and 48.29, which were properly promulgated by the Secretary, we find the Secretary approved the forms upon which Kendrick and the miners made their false certifications.

did not act contrary to the law and clearly acted within his discretion in approving a form which allows an instructor to certify on MSHA form 5000-23, in the operator's stead as the operator's agent, that the required training was actually provided. Similarly, the Secretary did not act arbitrarily or capriciously in approving a form which also provides a space for the miner to verify completion of training. See 43 Fed. Reg. 47,454, 47,457 (miners should acknowledge completion of the training program on the certificate).

Second, even if we accept Ms. Turner's argument that these forms are not the proper forms required to be maintained pursuant to 30 U.S.C. § 825(c), false statements on these forms still violate 30 U.S.C. § 820(f), because these forms are also required to be maintained under 30 U.S.C. § 813(h). This section of the Act authorizes the Secretary of Labor or the Secretary of Health and Human Services to require operators to establish and maintain any other records, reports, or information needed so that either Secretary can perform their functions. 30 U.S.C. § 813(h). Given that 30 U.S.C. § 825(a)(3) requires the Secretary of Labor to ensure that miners obtain at least eight hours of safety training per year, it is not unreasonable for the Secretary to require a form to be maintained at the mine site which would provide information concerning whether such training was actually given. Thus, false statements by anyone on these forms are punishable under 30 U.S.C. § 820(f), regardless of whether they are required to be maintained pursuant to 30 U.S.C.§ 825(c) or 30 U.S.C. § 813(h).

Third, it is not logical nor good public policy to allow non-operators to make false certifications on the MSHA form 5000-23, and thereby shield the operators from liability. The whole point of the forms and the requirement that the operator maintain them at the mine site is to ensure that the miners actually receive eight hours of annual health and safety training. A false certification on a MSHA form 5000-23 by the operator, or anyone on the operator's behalf, prevents a mine inspector from discovering that the training has not occurred and delays the implementation of corrective action. In addition, the penalties provision does not single out operators for punishment; rather, it provides that criminal penalties await"[w]hoever knowingly makes any false statement, representation, or certification [on any

9

form] required to be maintained pursuant to" the Act. 30 U.S.C. § 820(f) (emphasis added).

In conclusion, we agree with the reasoning in United States v. McCormick, No. 86-5580, 1987 WL 36176 (4th Cir. Jan. 9, 1987) (per curiam) (unpublished opinion). In McCormick , the defendant was also convicted of a violation of 30 U.S.C. § 820(f) for causing miners to state falsely on MSHA form 5000-23 that they had received the annual safety training. The court observed that"form 5000-23 is a form required to be maintained by the Act," and therefore "any person making misrepresentations . . . on such [a] form was liable under the Act." Id. at *1. The court in McCormick directly rejects the notion that non-operators can lie with impunity on MSHA form 5000-23, and notes that "[w]hile neither the defendant[a non-operator] nor the miners may have been required by the Act to certify that the training program was completed, they were nonetheless prohibited from knowingly making false statements on the relevant forms." Id.

We find that the MSHA 5000-23 forms at issue here, upon which Kendrick and the Bruce Coal miners made false certifications at the direction of the Turners, are proper forms required to be maintained by the Act. Anyone who knowingly makes a false statement, representation, or certification upon this form, or aids and abets another in so doing, is punishable under 30 U.S.C. § 820(f). In addition, anyone who conspires with others to make such false certifications is punishable under 18 U.S.C. § 371.

B.

Even if she can be liable for falsely signing the forms through an agent, Darlene Turner also argues that the United States did not establish beyond a reasonable doubt that Kendrick was her agent or that she had any knowledge of the false certifications orchestrated by her husband Dennis Turner. According to Ms. Turner, the United States did not present any evidence proving that Kendrick was acting under her authority in signing the forms, that she was present when Kendrick or the miners falsely signed the forms, or that she and Kendrick had any contact during the time period the falsifications took place, in March, 1993. Both Turners testified at trial that Ms. Turner was ignorant of the daily workings of the mine, and that she completely

10

deferred to Mr. Turner, who made all the important decisions. Then, since the jury acquitted her of all charges that required a finding of her knowledge of Kendrick's actions <u>at the time</u> the fictitious training supposedly occurred, Ms. Turner claims the jury found Kendrick was not her agent and that she had no knowledge of the false certifications when they occurred in March, 1993.**4** Based upon the evidence presented at trial and the jury's acquittal on certain counts, Ms. Turner contends that a rational jury could not then have found that she knew the forms were falsely certified, or that she played a role in encouraging others to make false statements on them, thereby convicting her of the other counts.

To the contrary, we find that, based on the evidence presented at trial, a rational jury could have found Ms. Turner guilty as charged of conspiring to make false certifications, and willfully making, or aiding and abetting the making of, false certifications, as set forth in Counts I, VII, XXI, and XXIII.**5** As the owner of the mine, Ms. Turner directly benefitted from the cost-savings that accrued from falsifying the forms instead of providing the miners with the day of paid training. Also important is the evidence that Ms. Turner gave Ms. Mullins the blank MSHA 5000-23 forms containing Kendrick's false certifications, and asked her to complete them. Moreover, not only was she the owner, President, and operator of Bruce Coal, but Ms. Turner also maintained the payroll and regularly submitted documents to the Mine Safety and Health Administration. This position gave her access to information concerning the dates the miners were hired and the amount of money they were paid. She knew that normally each miner received $50 for the day of training, but that in 1993, the payroll books never showed that payment. Finally, Ms. Turner filled out an annual safety training form for Kevin Stout, once he started working at the mine in May, 1993. Even though Ms. Turner hired Stout in May, and obviously knew that he had not worked for her in March, she filled in Stout's name and social security number on a MSHA

---

**4** The jury did find Ms. Turner guilty of Counts I, VII, XXI, and XXIII. Count I was the conspiracy charge, and Counts VII, XXI, and XXIII involved the false certification on three MSHA 5000-23 forms for miners not yet employed by Bruce Coal on March 20, 1993, the date the forms indicated the training had occurred.
**5** **See supra** note 4.

11

form 5000-23 signed by Kendrick, which represented that Stout was trained at the Turners' house on March 20, 1993. Consequently, the MSHA form 5000-23 Ms. Turner completed on Stout's behalf was clearly false.**6**

The jury had the opportunity to observe Darlene and Dennis Turner on the witness stand while the pair insisted that Ms. Turner knew nothing of the falsifications on the MSHA 5000-23 forms. The jury did not act irrationally in convicting her of the charges in Count I (conspiring to make false statements on MSHA form 5000-23) and Counts VII, XXI, and XXIII (willfully making, or aiding and abetting the making of, false statements on MSHA form 5000-23 for three miners hired after March 20, 1993); they simply doubted the Turners' veracity and found that the evidence to the contrary supported a verdict of guilty on these counts. A juror could have rationally found Ms. Turner guilty beyond a reasonable doubt on the counts of conviction. Thus, her conviction stands, and we affirm the district court's denial of Ms. Turner's Motion for Judgment of Acquittal. **7**

III.

The Turners also maintain that the district court erred in enhancing their sentences under the United States Sentencing Guidelines. Appellate review of the district court's application of the sentencing guidelines depends upon the circumstances of the case. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989). Legal issues are subject to de novo review, whereas factual determinations are given due deference and are affirmed unless they are "clearly erroneous." Id. at 217-18 (citing 18 U.S.C. § 3742(e)). The district court made the factual determinations that the Turners' offenses involved the conscious or reckless risk of serious bodily injury, that Mr. Turner was an orga-

_____

**6** Count XXIII charged Ms. Turner with willfully making, or aiding and abetting the making of, false statements on MSHA form 5000-23 for Kevin Stout.

**7** This court also agrees with the district court that "[e]ven if it was assumed that [Ms. Turner] did not grant Kendrick actual authority to make these false statements, she ratified his authority by her silence and in using his false statements to certify training that had not been done." (Mem. Op., June 27, 1995.)

12

nizer of a criminal activity involving five or more participants, and that the Turners abused a position of public or private trust. Therefore, this court shall affirm unless the district court's decisions are clearly erroneous. See United States v. Goode , No. 95-5003, 1995 WL 131316, *3 (4th Cir. March 15, 1995) (per curiam) (unpublished opinion) (district court's factual determination that defendant was reckless in creating a risk of serious bodily injury was not clearly erroneous); United States v. Helton, 953 F.2d 867, 869 (4th Cir. 1992) (whether a defendant held a position of trust and whether he abused it are both factual determinations reviewable for clear error); United States v. Sheffer, 896 F.2d 842, 846 (4th Cir.) (district court's determination that defendant was an organizer or leader of a criminal activity, that it involved five or more participants, and that the business was extensive is essentially factual, and therefore subject to the clearly erroneous standard), cert. denied, 498 U.S. 838 (1990).

A.

The Turners contend that the lower court erred in enhancing their base offense levels from level six to level thirteen pursuant to USSG § 2F1.1(b)(4)(A), which mandates such an enhancement if the "offense involved the conscious or reckless risk of serious bodily injury." They insist that the false certifications did not negatively impact safety at Bruce Coal so as to warrant a finding of "conscious or reckless risk of serious bodily injury." Moreover, Darlene Turner argues that she lacked the knowledge of the field of mining that is necessary to support such a showing.

Although the miners never received the eight hours of annual safety training required by the Act and the regulations, the Turners nevertheless claim that they provided the miners with sufficient training via the mine superintendent and the videos provided by the Mine Safety and Health Administration. They also issued regular safety notices and distributed safety pamphlets. The Turners point out that during the time of these "legal" violations, the accident frequency rate at the mine fell markedly, from 25.96 to 4.00. In recognition of this reduction in reported accidents at the mine, Bruce Coal received an award and was removed from the Joint Mine Assistance ("JMA") program, a special program designed to address safety concerns at the country's most unsafe mines.

13

By stressing that safety at the mine was not affected by their failure to comply with the Act, the Turners try to distinguish their situation from the one found in United States v. Goode, No. 95-5003, 1995 WL 131316. In Goode, a mine foreman pled guilty to violating 30 U.S.C. § 820(c) by allowing miners to smoke in the mines, and then falsifying records to conceal the violations. The mine safety violations were discovered after a methane explosion in the mine killed eight men. Id. at *1. As in the instant case, Goode challenged the district court's determination that his offense involved a "conscious or reckless risk of serious bodily injury." Id. at *2.

This court in Goode affirmed the district court's enhancement under USSG § 2F1.1(b)(4)(A). The court noted that "[a]s foreman, Goode knew of the safety standards which he violated, and was aware of the dangers of smoking in the mine, having personally recorded high levels of methane gas" before the explosions. Id. at *3. The court rejected Goode's attempts to distance himself from personal liability for the explosion, noting that

> [h]is logic seems to be that, if no injuries or fatalities occurred as the direct result of his violations, his offense could not have involved the conscious or reckless risk of serious bodily injury. This theory ignores the fact that a risk need not actually come to fruition to be a real risk. The guideline asks if there was a risk . . . , not whether serious bodily injury actually directly resulted from the defendant's behavior.

Id. (emphasis added). The court agreed with the district court that "`the fact that no deaths directly resulted from the conduct doesn't make it any less reckless.'" Id.

The Turners attempt to distinguish Goode in two ways. First, they interpret Goode as requiring special knowledge of potential dangers that could arise out of the safety violations, and argue that Ms. Turner lacked that special knowledge. According to the Turners, Goode was much more knowledgeable about the dangers he courted by violating mine safety rules, and he was more active than Ms. Turner in covering up the violations. Ms. Turner claims she had no mining experience or safety training at the time of the violations, and she was

14

completely unaware that the certifications were false and the training was not given.

Goode does not impose a "special knowledge" requirement; rather, the court simply applied USSG § 2F1.1(b)(4)(A), and found that defendant, in permitting smoking in the methane-tainted atmosphere of the mine, knew his violations of the safety standards created a risk of serious bodily injury. Similarly, there is substantial evidence that Ms. Turner was aware of the false certifications and the fact that the miners did not receive safety training in March, 1993. Ms. Turner was the owner, President, and a mine operator of Bruce Coal Company; she was aware of the training requirements; she had access to information concerning the miners' hire dates and wages; she submitted documents to the Mine Safety and Health Administration; and she directed Stout to state falsely on MSHA form 5000-23 that he received Kendrick's training in March, 1993, when she knew Stout was not yet employed on that date.

The Turners also attempt to distinguish Goode by arguing that the sentencing court's enhancement under USSG § 2F1.1 was unwarranted because the United States failed to show any special characteristics of this offense creating a risk of serious bodily injury. According to the Turners, the United States did not show that any dangerous condition existed as a result of the false certifications on the MSHA 5000-23 forms.

Substantial evidence, however, supports the district court's finding that these false certifications did create a risk of serious bodily injury at the Bruce Coal mine. Because the Turners failed to provide their miners with the required annual training, the miners did not receive mine-specific safety information concerning the mine's roof or ground control plans, ventilation plans, and safety devices. Moreover, the record reflects that the Bruce Coal underground mine was one of the least safe mines in the country, receiving hundreds of safety violations and reporting numerous accidents between 1987-1994. Due to its poor safety record and dangerous conditions, Bruce Coal was twice placed in the JMA program.**8**

_____

**8** Although Bruce Coal was removed from the JMA program when accident rates fell, the record reflects that the Turners failed to properly and timely report some of the accidents that did occur. Therefore, it is possible that Bruce Coal would not have been removed from the JMA program if the true accident report figures were known.

15

Given the myriad of safety problems experienced over the years at Bruce Coal, the general danger of underground mining, and the potential risks that could arise as a result of having untrained miners in that setting, the district court did not err in enhancing the Turners' base offense levels from level six to level thirteen pursuant to USSG § 2F1.1(b)(4)(A), because the Turners' offenses "involved the conscious or reckless risk of serious bodily injury." As the court in Goode noted, the fact that no accidents are directly attributable to the lack of training does not make the Turners' conduct any less reckless. Goode, No. 95-5003, 1995 WL 131316, at *3.

B.

Dennis Turner further argues that he was not an organizer of a criminal activity involving five or more persons, and hence he does not deserve a four level enhancement. Under USSG§ 3B1.1(a), the sentencing court must increase the defendant's offense level by four levels if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." The term "participant" is defined in Application Note 1 as "a person who is criminally responsible for the commission of the offense." USSG § 3B1.1(a), comment. (n.1).

Mr. Turner maintains that the miners were not "participants" in any crime, as they cannot be held criminally responsible for falsely stating on MSHA form 5000-23 that they received the required training from Kendrick. Relying on the same argument presented by Ms. Turner in Part II.A., Mr. Turner argues that the signature of a miner on that form is not required by the Act, and therefore the false statement of a miner on MSHA form 5000-23 cannot be punished under 30 U.S.C. § 820(f). As a result, Mr. Turner argues there are, at most, only three criminal participants in this case: Dennis Turner, Darlene Turner, and Kendrick, assuming that Kendrick was acting as the Turners' agent.

As discussed previously in Part II.A., a non-operator's false statement on MSHA form 5000-23 still violates 30 U.S.C.§ 820(f). Under § 820(f), criminal penalties will be imposed on "[w]hoever knowingly makes any false statement, representation, or certification" on any document required to be maintained by the Act. Accordingly, the miners violated the law when they falsely stated on the forms at issue

16

that they received safety training from Kendrick when they did not. Each one is "criminally responsible for the commission of the offense," even though they were not charged with it. Moreover, the Turners' illegal scheme would not have succeeded without the participation of the miners. Because there were well over five "participants" in this criminal activity, and Mr. Turner is undeniably its organizer, the district court was not clearly erroneous when it gave Mr. Turner a four level enhancement under USSG § 3B1.1.

C.

The Turners' final contention is that the district court erred during sentencing when it enhanced their offense levels by two levels pursuant to USSG § 3B1.3, upon a finding that they "abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." First, they argue that the United States presented no evidence that either of them was in a position of public or private trust. Under the guidelines, a person holds "a position of public or private trust" if his or her position is "characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference)." USSG § 3B1.3, comment. (n.1). By virtue of their positions as owner, President, and mine operators of Bruce Coal, both Turners regularly exercised managerial discretion at the mine. The miners, as employees of the Turners, had to privately trust in them and defer to their judgment regarding mine safety and training. In addition, the rest of society had to publicly trust the Turners to follow the mine safety laws during operation of the Bruce Coal mine. Accordingly, both Turners held a position of public and private trust.

Second, the Turners argue that even if they did hold such a position of public or private trust, the abuse of a position of trust is a "specific offense characteristic" built into the offense of conviction, and hence it cannot serve as an enhancement factor under USSG§ 3B1.3. They base this argument on the same idea, discussed in Part II.A. and Part III.B. above, that only through the false certification by an "operator" (the position of trust) may a violation occur under 30 U.S.C. § 820(f). Because this crime can only be committed by an operator, say the Turners, one's status as an operator cannot be used to enhance a sentence.

17

As previously stated, 30 U.S.C. § 820(f) is violated by "[w]hoever" makes any false statement on any form required to be maintained by the Act. Consequently, every miner who falsely stated that he received the training is also guilty of the offense, and can be prosecuted. If a miner was prosecuted, the enhancement for abuse of a position of trust under USSG § 3B1.3 would not apply. Such an enhancement would apply to the Turners, however, because, as mine operators, each held a position in management which gave them leverage over the miners, and which enabled them to convince the miners to commit and conceal the false statements made on the MSHA 5000-23 forms. Moreover, because society trusted the Turners to follow the mine safety laws and ensure that the Bruce Coal miners actually received the required safety training, their position of public trust also made detection of the violations of § 820(f) more difficult. Thus, the district court was not clearly erroneous in giving the Turners a two level enhancement under USSG § 3B1.3 for their abuse of a position of public or private trust.

IV.

Based on the foregoing discussion, we conclude that the district court did not err in denying Darlene Turner's Motion for Judgment of Acquittal or in determining the sentence of Darlene or Dennis Turner. Accordingly, the decision below is

AFFIRMED.

18