**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
### FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

v.

DANIEL L. POWELL,
　　　　　　*Defendant-Appellant.*

No. 02-4367

Appeal from the United States District Court
for the Southern District of West Virginia, at Beckley.
David A. Faber, Chief District Judge.
(CR-01-162)

Submitted: January 30, 2003

Decided: February 21, 2003

Before WIDENER, NIEMEYER, and LUTTIG, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Gregory J. Campbell, CAMPBELL & TURKALY, Charleston, West
Virginia, for Appellant. Kasey Warner, United States Attorney, Larry
R. Ellis, Assistant United States Attorney, Charleston, West Virginia,
for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Daniel L. Powell was convicted by a jury of nine counts of aiding and abetting the making of false claims against the United States in violation of 18 U.S.C. § 287 (2000). He was sentenced to a term of sixty-three months imprisonment. Powell appeals his sentence, arguing that the district court improperly calculated the amount of loss, *U.S. Sentencing Guidelines Manual* § 2F1.1 (1998), clearly erred when it found that the offense involved a conscious or reckless risk of serious bodily injury, § 2F1.1(b)(6)(A), and violated the rule set out in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), by increasing his offense level for conduct not charged in the indictment or proved to the jury. We affirm.

Powell was a quality assurance representative with the Department of Defense. From 1996 to 1999, Powell was responsible for insuring that Talon Manufacturing Company performed the work it had contracted to do for the Army. Talon had been hired to "demilitarize" a large number of artillery fuzes[1] by removing all the explosive and energetic material contained in the fuzes. The fuzes were metal cones designed to screw onto an artillery shell. Each fuze contained a timing mechanism and a firing train—a series of small explosives. To prevent premature firing, the explosives were not aligned until the fuze was screwed into place on the shell. The explosive material in the fuze was equivalent to that of a blasting cap, or an M80.

Powell periodically signed "DD-250 Forms," which certified that a specified number of fuzes had been demilitarized successfully. Talon submitted these forms to the Army before receiving payment. In September 2000, the Army discovered that more than 600,000 undemilitarized fuzes had been sold by Talon to SADCO Recovery, Inc., and were being stored in Point Pleasant and Jumping Branch,

---

[1]The spelling "fuze" is used by all parties in this case. "Fuze" and "fuse" are alternative spellings for a detonating device used to set off an explosive, to be distinguished from "fuse," the household safety device designed to break a circuit when the electric current exceeds a specified amperage. *See* Webster's Third New International Dictionary.

West Virginia. SADCO was owned by former officers of Talon. At the Jumping Branch site, fuzes were placed haphazardly in a large cardboard box, which created a danger that some of them might detonate and "propagate," i.e., cause a chain-reaction explosion.

Powell at first denied any knowledge of undemilitarized fuzes having been sold or shipped from the Talon plant, but later told investigators that he signed false certifications after Talon executives asked him to do so in order that they could obtain payment to meet their payroll. Powell said the executives told him that Talon had not been able to figure out how to demilitarize the fuzes economically, but would continue to work on finding a process for doing so and would not ship the fuzes elsewhere before they were demilitarized. Powell said that when Army inspectors came to Talon the company showed them workers who appeared to be demilitarizing fuzes. Powell said he was aware of the deception. Subsequently, Powell reverted to his original denial that he had ever signed DD-250 forms for work not completed. At Powell's trial, the government introduced nine fraudulent DD-250 claim forms corresponding to the nine counts in the indictment. At sentencing, the government took the position, based on Powell's statement, that Powell had filed at least thirty-five false forms.

After it had paid Talon $553,320 for demilitarizing work that was not performed, the Army removed over 636,000 fuzes from the SADCO sites, repacked them, and shipped them to Army depots at a cost of approximately $1 million. The Army's anticipated cost for demilitarization of the fuzes was $550,000.

In calculating Powell's offense level, the probation officer used all three amounts and recommended a 12-level enhancement based on a loss of $2,103,320. USSG § 2F1.1(b)(1)(M) [loss of $1,500,000 to $2,500,000]. Powell challenged only the $1 million consequential loss. The district court found that it was reasonably foreseeable to Powell that, if Talon did not perform the demilitarization, the Army would eventually have to pay to have the work done elsewhere. On appeal, Powell contends that the court's finding was not supported by evidence (1) that he knew of Talon's sale to SADCO or that he benefitted from it, or (2) that he knew or should have known that Talon would violate its agreement with the Army by shipping undemilita-

rized fuzes to SADCO and that the fuzes would be improperly stored. He suggests that he had no reason to believe Talon would move or sell the undemilitarized fuzes because no evidence was introduced to show that Talon lacked space to store them.

Application Note 8(c) to § 2F1.1 directs that loss in procurement fraud and product substitution cases includes consequential damages. This portion of the commentary also provides that, "in the case of fraud affecting a defense contract award, loss includes the reasonably foreseeable administrative cost to the government and other participants of repeating or correcting the procurement action affected, plus any increased cost to procure the product or service involved that was reasonably foreseeable." The district court's finding that it was reasonably foreseeable to Powell that his conduct would result in expenditures by the government to repeat or correct the service involved is a factual finding reviewed for clear error. *United States v. Harrison*, 272 F.3d 220, 223 (4th Cir. 2001) (sentencing findings that do not require interpretation of guideline are fact findings not to be disturbed absent clear error), *cert. denied*, 123 S. Ct. 162 (2002).

The sentencing court may hold a defendant accountable for reasonably foreseeable actions of another person involved with him in a jointly undertaken criminal activity without finding that the defendant had actual knowledge of the conduct. USSG § 1B1.3(a)(1)(B). Here, the evidence showed that Powell signed between nine and thirty-five false DD-250 forms between July 1997 and October 1998. During this time, Talon made no progress in developing a procedure for demilitarizing the fuzes as they had contracted to do, yet Powell continued to certify that the work had been done. Even if Powell thought Talon would store the undemilitarized fuzes on its own premises indefinitely, he could reasonably foresee that at some point the Army would discover that the work it had paid Talon to do had not been done. Therefore, Powell could reasonably foresee that, if the fraud were discovered, the Army would incur considerable administrative and other expense to have the fuzes demilitarized. Consequently, the district court did not clearly err in finding that the $1 million expended by the Army to remove the fuzes from SADCO was reasonably foreseeable to Powell and was properly included in the amount of loss.

Powell also alleges that the district court erred by including in the amount of loss both the $554,320 the Army paid to Talon and the Army's future $550,000 estimated cost of demilitarizing the fuzes Talon failed to demilitarize. Because Powell failed to object to the loss calculation on this ground in the district court, the issue is reviewed for plain error. *United States v. Olano*, 507 U.S. 725, 732-37 (1993). Powell contends that the Army has only lost the $553,320 it paid to Talon for work not performed because it expected to pay $550,000 for demilitarization of the fuzes it sent to Talon for processing. Therefore, if the Army spends $500,000 in the future to have someone else do the work, that amount cannot properly be deemed a loss. While this claim is persuasive, Powell has not shown that the court plainly erred in making this enhancement because, even if the $550,000 future cost of demilitarization is eliminated, the loss still exceeds $1,500,000.

Powell next contends that the district court's finding that the offense involved a conscious or reckless risk of serious injury was based on its speculative belief, unsupported by any evidence, that he knew or should have known that Talon would ship fuzes away from its premises before they had been demilitarized and that Talon did not have space to store the fuzes until such time as they were demilitarized. The district court's determination that a fraud offense involved the conscious or reckless risk of a serious bodily injury is a factual finding that is reviewed for clear error. *United States v. Turner*, 102 F.3d 1350, 1357 (4th Cir. 1996) (affirming enhancement where mine owners falsely certified that miners had received required safety training).

The evidence at trial established that, once Talon obtained a certification that a batch of fuzes had been demilitarized, it was free to ship or dispose of them as it pleased under its contract with the Army. Even if Talon executives indeed assured Powell that Talon would not dispose of the fuzes before demilitarizing them, it should have been foreseeable to him that persons willing to submit a stream of false certifications to the Army would not likely keep a promise to him. Moreover, he apparently made no effort to determine what Talon actually did with the undemilitarized fuzes. The fuzes posed a danger to anyone handling or storing them who was not trained to do so, and also, as the court later noted, posed a graver danger to the public safety in

that they could have been acquired by groups who might wish to use them for their original military purpose. Therefore, we conclude that the district court did not clearly err in finding that the offense posed, at the least, a reckless risk of serious bodily injury.

Last, Powell's claim that the district court erred by increasing his offense level based on loss amounts not charged in the indictment is without merit. *Apprendi* is not implicated when the sentencing court makes factual findings that increase the guideline range but the sentence does not exceed the statutory maximum. *Harris v. United States*, 122 S. Ct. 2406, 2418 (2002); *United States v. Kinter*, 235 F.3d 192, 199-202 (4th Cir. 2000), *cert. denied*, 532 U.S. 937 (2002). In Powell's case, the statutory maximum sentence for each of the nine fraud counts was sixty months. 18 U.S.C. § 287. Powell's guideline range was 63-78 months. He received a sentence of sixty-three months. The district court had authority to impose consecutive sentences to the extent necessary to impose a sentence within the guideline range. USSG § 5G1.2(d); *United States v. White*, 238 F.3d 537, 543 (4th Cir.), *cert. denied*, 532 U.S. 1074 (2001).[2]

We therefore affirm the sentence imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*

---

[2]To achieve a sentence of 63 months here, the district court imposed a sentence of 7 months imprisonment for each count and made the sentences consecutive.