**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-4138**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

EDDIE BURL SMITH,

Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. John T. Copenhaver, Jr., District Judge. (2:08-cr-00056-1)

Submitted:  October 27, 2009          Decided:  November 30, 2009

Before WILKINSON and AGEE, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

John E. Jessee, JESSEE & READ, P.C., Abingdon, Virginia, for Appellant. Charles T. Miller, United States Attorney, R. Booth Goodwin II, Assistant United States Attorney, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Eddie Burl Smith (Smith) pled guilty to conspiracy to defraud the United States, 18 U.S.C. § 371 (2006) (Count One), and fraudulent receipt of bankruptcy property, 18 U.S.C. §§ 152(2), 2 (2006) (Count Eight), and was sentenced to a term of fifty-seven months imprisonment. Smith appeals his sentence, contending that the district court clearly erred in finding that he was an organizer or leader in the conspiracy, U.S. Sentencing Guidelines Manual § 3B1.1(a) (2008), and that he abused a position of trust, USSG § 3B1.3. We affirm.

Smith was president of Carl E. Smith, Inc. (CESI), a West Virginia corporation which built pipelines for oil and gas. The company had been started by Smith's father; at his death in 1987, Smith and his brothers, Larry and Donald, became equal shareholders. From 1998 to 2006, the period of the conspiracy, Smith's brother Donald was vice-president of CESI, and Smith's son, Edward Michael Smith, was secretary and treasurer. After civil litigation initiated by Larry in 1999 revealed questionable financial practices and a lack of proper accounting at CESI, the IRS began an investigation, which led to Smith's eventual guilty plea to the instant offenses. According to information in the presentence report, CESI's "principals and officers" defrauded the IRS by using corporate funds extensively for personal vehicles and other personal purchases without

2

reporting the assets acquired as personal income. In addition, the company used color-coded checks to avoid payroll reporting requirements. Some employees were paid with both yellow payroll checks and blue expense checks. Wages that were paid as expense reimbursement were not reflected in the employee's W-2 forms and taxes were only withheld from the payroll check. With respect to these funds, CESI failed to meet its obligation to collect the required "employment taxes,"[1] hold them in trust, and deposit them in an authorized financial institution at intervals. In 2003, Smith and his son, Edward Michael Smith, filed for Chapter 11 bankruptcy on behalf of CESI and its subsidiaries. A month later, they formed Smith Well Service (SWS), a limited liability company unrelated to CESI and its subsidiaries. Edward Michael Smith was the sole proprietor. During the CESI bankruptcy, Smith and his son engaged in certain transactions which benefitted SWS without the knowledge or approval of the bankruptcy court.

At sentencing, the district court determined that Smith had a leadership role in the conspiracy and that there were at least five participants: Smith; his son, Edward Michael Smith; his brother, Donald Smith; and Donald's wife and

---

[1] "Employment taxes" include both the employee's and the company's share of federal income tax, Social Security, and Medicare taxes.

daughter, Judith and Jaclyn Smith.  The court found that Smith had the primary responsibility for manipulation of the payroll and expense checks to carry out the fraud involving trust fund taxes and that his position as president afforded him discretion that facilitated the offense.  Smith contests these rulings on appeal.

The district court's determination of the defendant's role in the offense is a factual finding reviewed for clear error.  United States v. Kellam, 568 F.3d 125, 147-48 (4th Cir. 2009).  A four-level increase is provided under § 3B1.1(a) for a defendant who is an organizer or leader of an offense which involved more than five participants or was otherwise extensive. To qualify, the defendant must have been the organizer or leader of "one or more other participants."  USSG § 3B1.1 cmt. n.2. Factors to be considered include:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

USSG § 3B1.1 cmt. n.4.

Smith contends that he had "no more control or ownership of the company" than Donald, that there was no evidence he recruited accomplices, and that much of the benefits went to his son or to Donald's family and friends.  He argues

that there is little evidence as to whether he participated in planning or organizing the scheme to defraud the IRS, and that family members acted independently when they used the company to pay for personal purchases. He argues that, as president and signer of the fraudulent expense checks in the blue-check scheme, he exercised control over property, not people, noting that control of property alone does not warrant a four-level leadership adjustment. USSG § 3B1.1 cmt. n.2; see also United States v. Capers, 61 F.3d 1100, 1108-13 (4th Cir. 1995). Smith also maintains that there were fewer than five participants because there was no evidence either Jaclyn Smith or Brian Tanner[2] was a "knowing culpable participant" in the conspiracy.

With respect to the number of participants, Application Note 1 to § 3B1.1 states that "[a] 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." Smith acknowledged at sentencing that he knew Jaclyn was on the CESI payroll and was paid for work she did not do. He did not dispute the information in the presentence report on which the district court relied in deciding that Judith and Jaclyn were participants; specifically, that in addition to being paid as

---

[2] Brian Tanner pled guilty to income tax evasion. The district court did not find him to be a participant in the conspiracy.

CESI employees, Judith and Jaclyn used a CESI car and credit card, that CESI paid the expenses for the horse farm where they lived, and that they did not report these benefits as income, which caused each of them to file a false tax return, and also caused "the inflation of corporate expenses and the filing of false corporate tax returns." We conclude that these facts were sufficient for the district court to find that Jaclyn was a criminally responsible participant. In addition, as the government argues, the blue-check/yellow-check scheme required the participation of CESI employees such as payroll clerks and in-house accountants.[3]

By virtue of his position as president of the company, Smith had the authority to endorse or to stop the scheme to defraud the IRS. Smith's statements at the Rule 11 hearing disclose that he actively engaged in and thus promoted the fraudulent scheme. Therefore, the district court did not clearly err in finding that he had a leadership role.

A two-level adjustment should be made "[i]f the defendant abused a position of public or private trust . . . in

---

[3] This argument was not made in the district court, but is an alternative ground for finding the required number of participants. We may affirm for any reason appearing in the record. United States v. Smith, 395 F.3d 516, 519 (4th Cir. 2005) ("We are not limited to evaluation of the grounds offered by the district court to support its decision, but may affirm on any grounds apparent from the record." (citation omitted)).

6

a manner that significantly facilitated the commission or concealment of the offense." USSG § 3B1.3. A position of "[p]ublic or private trust" means a position "characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference)." USSG § 3B1.3 cmt. n.1. The district court's decision that a defendant had a position of trust is a factual determination reviewed for clear error. United States v. Bollin, 264 F.3d 391, 415 (4th Cir. 2001). The question must be examined from the perspective of the victim. United States v. Godwin, 272 F.3d 659, 671 (4th Cir. 2001).

Smith contends that no relationship of trust existed between him and the IRS, which was identified as the victim of the offense in the presentence report. He relies on two tax evasion decisions from other circuits where the adjustment was not applied. In United States v. Guidry, 199 F.3d 1150, 1160 (10th Cir. 1999), the appeals court held that the defendant "[d]id not occupy a position of trust vis-à-vis the government, the victim in his case." In United States v. Barakat, 130 F.3d 1448, 1455-56 (11th Cir. 1997), the appeals court held that the defendant occupied a position of trust, but did not use it to commit or conceal his tax evasion.

In this case, however, as an employer, Smith was placed in a position of trust by the government. He was

7

entrusted with collecting, holding, and depositing funds designated in part for Social Security and Medicare and his failure to carry out this responsibility victimized taxpayers. United States v. Adam, 70 F.3d 776, 781-82 (4th Cir. 1995) (victims of Medicaid fraud are American taxpayers). Similarly, in United States v. Turner, 102 F.3d 1350 (4th Cir. 1996), we held that mine operators occupied a position of public and private trust, which they abused by declining to follow mine safety laws or provide adequate safety training for miners. Their abuse of that trust victimized both the miners and "the rest of society." Id. at 1360.

We have held that physicians and medical care providers who defraud Medicaid abuse a position of trust. See United States v. Bolden, 325 F.3d 471, 504-05 (4th Cir. 2003). In Bolden, we observed that, "[b]ecause of the discretion Medicaid confers upon care providers . . . such providers owe a fiduciary duty to Medicaid. Indeed, we see it as paramount that Medicaid be able to 'trust' its service providers." Id. at 505 n.41. Similarly, it is essential that the government be able to trust employers to collect, hold in trust, and deposit the "employment taxes" owed by the employees and the company. The government maintains that Smith had both a fiduciary obligation to the IRS to carry out this responsibility, and a fiduciary relationship with the employees of CESI which carried the same

8

obligation, notwithstanding the willingness of some employees to participate in the scheme to defraud. We agree, and conclude that the district court did not clearly err in applying the adjustment for abuse of a position of trust.

We therefore affirm the sentence imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED