[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 27, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-10916

_____

D. C. Docket No. 07-00162-CR-ORL-19-KRS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JACQUELIN LOUIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(February 27, 2009)**

Before BARKETT, PRYOR and FARRIS,[*] Circuit Judges.

PRYOR, Circuit Judge:

_____

[*]Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

This appeal presents a question of first impression in this circuit: whether a federally licensed firearms dealer who sells a firearm to a convicted felon is subject to a sentence enhancement for abusing a position of public trust. United States Sentencing Guidelines § 3B1.3 (Nov. 2008). Jacquelin Louis appeals the two-level enhancement of his sentence for abusing a position of public trust when he sold firearms to straw purchasers for convicted felons. The district court erroneously applied the enhancement on the ground that firearms dealers occupy positions of public trust as "the first line of defense in preventing criminals from accessing dangerous weapons." Because we conclude that firearms dealers are closely regulated and do not exercise the substantial discretion necessary for a position of public trust, we hold that those licensees are not subject to the abuse-of-trust enhancement. We affirm Louis's conviction, vacate his sentence, and remand for resentencing.

## I. BACKGROUND

In 2004, Jacquelin Louis obtained a federal firearms license. Louis operated a dealership, Southeast Atlantic Services, Inc., in Orlando, Florida. After a routine meeting with Louis in June 2006 to assess his compliance with federal regulations that restrict the sale of firearms to purchasers who are not convicted felons and who state on a required form that they are the actual purchasers of the firearm, 18

2

U.S.C. § 922(d)(1); 27 C.F.R. § 478.124, the Bureau of Alcohol, Tobacco and Firearms commenced an investigation.

In October 2006, the Bureau arranged for a paid informant who was also a convicted felon, Stanley Domino, to attempt to purchase a firearm from Louis. Louis and Domino met at a used car lot, and Domino selected a firearm from the trunk of Louis's car. Domino told Louis that he was a convicted felon. Louis asked if someone else could complete the required form on Domino's behalf, and Domino stated that he would locate someone. Domino paid Louis, and Louis gave Domino a receipt. A few days later, Domino returned with an undercover agent, Anna-Kim Hedden, who completed the required form on Domino's behalf, and Louis gave Domino the firearm.

In November 2006, the Bureau arranged for a second paid informant who was also a convicted felon, Michael Cleary, to attempt to purchase a firearm from Louis. Like Domino, Cleary selected a firearm and told Louis that he could not complete the required form because he was a convicted felon. Cleary was accompanied by an undercover agent, Matt Wilson, and Louis asked whether Wilson could complete the form. Cleary responded affirmatively, and Wilson completed the form. Wilson left blank the question that asked whether he was the actual purchaser of the firearm and told Louis that he was not the actual purchaser.

3

Louis instructed him to answer the question affirmatively. Louis gave Cleary the firearm.

In December 2006, Louis and Domino met again at the used car lot. Domino and an officer from the Brevard County Sheriff's Office, Brian Guildford, had asked Louis to order five firearms for Domino in early November, and Louis had received the firearms. Domino was accompanied at the December meeting by Hedden. Louis asked Domino whether the firearms should be placed in Guildford's name or Hedden's name.

During the transaction, agent Scott Perala approached Louis and informed him of the criminal investigation into his sales. Perala advised Louis of his rights to remain silent and to an attorney. Louis stated that he knew that Domino was a convicted felon when he sold the firearm and that he did not sell a firearm to Cleary, but to Wilson.

Louis was indicted for two counts of selling a firearm to a convicted felon. 18 U.S.C. §§ 922(d)(1), 924(a)(2). The December transaction was not charged in the indictment. At the close of the evidence at trial, Louis requested a jury instruction about entrapment. The district court denied Louis's request on the ground Louis failed to present sufficient evidence that the government had induced him to commit a crime. The jury convicted Louis of both counts of the indictment.

The presentence investigation report listed Louis's base offense level at 14, U.S.S.G. § 2K2.1(a)(6)(B), and increased Louis's offense level by two points because Louis had agreed to sell Domino five additional firearms, id. § 2K2.1(b)(1)(A), and by another two points because Louis had abused a position of trust as a federally licensed firearms dealer, id. § 3B1.3. At the sentencing hearing, Louis objected to both enhancements. Louis objected to the use of the December transaction to enhance his sentence because the "charge was never brought to the jury, was never charged." Louis objected to the application of the abuse-of-trust enhancement and argued that a license did not signify any special skill or public trust. Louis also argued that the license was easy to obtain, and that if possessing it subjected the holder to this enhancement, then speeding tickets would subject licensed drivers to the enhancement.

The district court overruled both objections. The district court found as follows that a firearms dealer occupies a position of public trust:

> [T]he public trust, in part, is that the person who is duly licensed and empowered by the government to sell weapons will not sell them in a manner, because they are dangerous instrumentalities, that they will cause or are likely to cause further harm in society, because they're put in the hands of people who have already shown that they cannot comply with the rules and laws of society.

The district court sentenced Louis to twenty-seven months of imprisonment and two years of supervised release.

5

Louis appealed the denial of his request for a jury instruction on entrapment, the use of the uncharged transaction to enhance his sentence, and the application of the abuse-of-trust enhancement. Louis requested release pending appeal, and the district court made further findings about the enhancements when it denied that request. The district court stated that it was required to consider "the intended sale of five additional firearms" because that transaction "was part of the same course of conduct or common scheme or plan as the offenses of conviction." The district court stated that Louis was subject to the abuse-of-trust enhancement because he "breached" his duty to the public as "the first line of defense in preventing criminals from accessing dangerous weapons" when he "enable[d] a straw purchase for two convicted felons."

## II. STANDARDS OF REVIEW

"We review a district court's refusal to give a requested jury instruction for abuse of discretion." United States v. Fulford, 267 F.3d 1241, 1245 (11th Cir. 2001) (internal quotation marks omitted). We review de novo the application of the sentencing guidelines and findings of fact for clear error. United States v. Baker, 432 F.3d 1189, 1253 (11th Cir. 2005). We "review de novo the district court's determination that the facts justify an abuse-of-trust enhancement." United States v. Britt, 388 F.3d 1369, 1371 (11th Cir. 2004), vacated on other grounds,

6

546 U.S. 930, 126 S. Ct. 411 (2005), reinstated in part, 437 F.3d 1103 (11th Cir. 2006).

## III.  DISCUSSION

Our discussion is divided in three parts.  We first discuss the jury instruction, we next discuss the enhancement of Louis's sentence on the basis of the uncharged transaction, and we then discuss the enhancement of Louis's sentence for abuse of public trust.  Because our precedents resolve the first two issues against Louis, our primary focus is on the enhancement for abuse of trust.

We reject Louis's argument that the district court abused its discretion when it declined to instruct the jury about entrapment.  Entrapment is an affirmative defense and requires a defendant to prove that, but for the "persuasion or mild coercion" of the government, he would not have committed the crime.  United States v. Ventura, 936 F.2d 1228, 1233 (11th Cir. 1991) (internal quotation marks omitted).  Louis did not prove that the government persuaded or coerced him to sell firearms to convicted felons.  To the contrary, Louis has admitted that he counseled the paid informants to find straw purchasers and advised an undercover agent to provide false information to assist one of the informants with his purchase.

We also reject Louis's argument that the district court erred when it

7

enhanced Louis's sentence on the basis of criminal conduct not charged in the indictment or proved to the jury. We have interpreted United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), to permit, under an advisory guidelines system, the enhancement of a defendant's sentence on the basis of facts not presented at trial. United States v. Smith, 480 F.3d 1277, 1281 (11th Cir. 2007). "[T]he district court's factual findings for purposes of sentencing may be based on, among other things, evidence heard during trial, undisputed statements in the [presentence investigation report], or evidence presented during the sentencing hearing." Id. (quoting United States v. Polar, 369 F.3d 1248, 1255 (11th Cir. 2004)). The district court did not err when it enhanced Louis's sentence under the advisory guidelines, U.S.S.G. § 2K2.1(b)(1)(A), because Louis planned to sell five additional firearms to Domino.

As to the main question, we agree with Louis that the district court erred when it applied the abuse-of-trust enhancement to Louis's sentence. A defendant is subject to a two-level enhancement of his sentence if he "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. "The determination of whether a defendant occupied a position of trust is extremely fact sensitive." Britt, 388 F.3d at 1372.

8

The guidelines define "positions of public or private trust" narrowly based on the professional discretion, if any, of the defendant:

> "Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature.

U.S.S.G. § 3B1.3 cmt. n.1. The guidelines illustrate the importance of discretion by stating that the enhancement would apply to a bank executive's fraudulent loan scheme, but not embezzlement by an ordinary bank teller, because the teller does not exercise the discretion described in the comment. Id.

We have not addressed whether a firearms dealer occupies a position of public trust or even whether any federal licensee occupies such a position, but our precedents provide some guidance. We have upheld the enhancement for a state legislator who embezzled money from a charity he administered with "no oversight," United States v. Walker, 490 F.3d 1282, 1300–01 (11th Cir. 2007); a doctor who committed Medicare fraud, United States v. Liss, 265 F.3d 1220, 1229–30 (11th Cir. 2001); an accountant employed by the Red Cross who illegally diverted federal funds intended to benefit needy individuals facing eviction from their homes, United States v. Harness, 180 F.3d 1232, 1236–37 (11th Cir. 1999); law enforcement officers who misused their patrol cars or abused their access to

9

private information, United States v. Terry, 60 F.3d 1541, 1545 (11th Cir. 1995), United States v. Pederson, 3 F.3d 1468, 1469–72 (11th Cir. 1993); a clerk of the Social Security Administration who processed applications for Social Security cards and "was so loosely supervised that she was able, over a period spanning more than four years," to commit fraud without detection, Britt, 388 F.3d at 1372; a deputy county registrar who processed voter registrations and fraudulently registered voters for absentee ballots, United States v. Smith, 231 F.3d 800, 819–20 (11th Cir. 2000); a grand juror entrusted to hear and weigh evidence impartially who revealed confidential information to the target of an investigation, United States v. Brenson, 104 F.3d 1267, 1287–88 (11th Cir. 1997); union officials who participated in a bribe to influence the operation of employee benefit plans, United States v. Kummer, 89 F.3d 1536, 1546–47 (11th Cir. 1996); and a post office clerk who was not closely supervised and embezzled postal funds, United States v. Milligan, 958 F.2d 345, 345–47 (11th Cir. 1992). We have ruled that a doctor who abused his prescription privileges to distribute controlled substances was ineligible for a downward departure because his sentence had been enhanced for abuse of a position of trust. United States v. Hoffer, 129 F.3d 1196, 1204–06 (11th Cir. 1997). We have reversed the enhancement of the sentence of a childcare center director who misused federal grants for two nonprofit programs but did not

have a fiduciary relationship with the agency that awarded the grants, <u>United States v. Williams</u>, 527 F.3d 1235, 1249–50 (11th Cir. 2008); an attorney who participated in a conspiracy to launder money from persons who were not his clients, <u>United States v. Morris</u>, 286 F.3d 1291, 1295–1300 (11th Cir. 2002); a closely-supervised security guard who stole money from the armored vehicle he was hired to protect, <u>United States v. Ward</u>, 222 F.3d 909, 911–13 (11th Cir. 2000); a home healthcare provider who committed Medicare fraud despite an intermediary's review and approval of her requests for reimbursement, <u>United States v. Garrison</u>, 133 F.3d 831, 837–43 (11th Cir. 1998); the officers of a healthcare provider who committed Medicare fraud but did not owe trust directly to the government, <u>United States v. Mills</u>, 138 F.3d 928, 941 (11th Cir. 1998); an employee of a county housing authority who committed tax evasion, <u>United States v. Barakat</u>, 130 F.3d 1448, 1454–56 (11th Cir. 1997); and a prison employee who smuggled drugs into the prison where he worked as a food service foreman, <u>United States v. Long</u>, 122 F.3d 1360, 1365–66 (11th Cir. 1997).

These precedents are consistent with the commentary to the guidelines. Fiduciaries and employees of a public or private agency who exercise considerable discretion are subject to the enhancement. Lower-level, closely supervised employees who exercise little discretion are not. The enhancement also requires

11

that the offender occupy a position of trust in relation to the victim, not another party.

The only reported decision of a sister circuit that considers the application of the enhancement to a firearms dealer comes from the Seventh Circuit. United States v. Podhorn, 549 F.3d 552, 560–61 (7th Cir. 2008). Podhorn was convicted of making false statements, 18 U.S.C. § 1001(a)(2), selling stolen firearms, id. § 922(j), selling firearms without maintaining proper records, id. § 922(b)(5), and failing to maintain proper firearm records, id. § 922(m). 549 F.3d at 555. The jury returned a special verdict finding that Podhorn violated section 3B1.3, and the presentence investigation report applied the enhancement. Id. at 560–61.

Podhorn did not argue that a federally licensed firearms dealer does not occupy a position of public trust; Podhorn instead argued that the jury instructions "referred disjunctively to a position of trust or a special skill, and it was impossible to tell from the jury's special verdict which of these two possible findings the jury made." Id. at 561. The court concluded that the indictment charged Podhorn with abusing a position of trust and that "there [was] no reason to suppose that the jury based its special verdict on the special skill component." Id. The court stated that "the § 3B1.3 enhancement was properly applied." Id.

In a separate opinion, Judge Ripple concurred with the application of the

12

enhancement because Podhorn did not argue that he did not occupy a position of public trust, id. at 562, but Judge Ripple disagreed with a general rule that an abuse-of-trust enhancement "may be applied on the ground that the defendant was the holder of a federal firearms license." Id. at 561. Judge Ripple stated that "no court has held that a[ federal firearms license] itself creates a position of trust," id. at 564, and opined that a license creates no such position because the "perfunctory" licensing qualifications, id. at 563 n.2, and strict recordkeeping and reporting requirements, id. at 564, make it "difficult to determine from [the] face [of the license] how [it] bestows on its holder the type of substantial discretion and responsibility necessary to apply [the enhancement]." Id. The license requires the licensee to comply with all sales and firearms requirements of federal, state, and local law, 18 U.S.C. §§ 923(d)(1)(F)(ii)(II), (e); to maintain records and report the disposition of firearms, id. §§ 923(g)(1)(A), (3)(A); to submit to periodic warrantless inspection, id. §§ 923(g)(1)(B), (C); to give prompt notice of theft to local authorities, id. § 923(g)(6); and to post his license at his business, id. § 923(h). Podhorn, 549 F.3d at 564. A licensee also is prohibited from transacting in a motor or towed vehicle, 18 U.S.C. § 923(j). Podhorn, 549 F.3d at 564.

One circuit has applied the enhancement to another kind of licensee, United States v. Gonzalez-Alvarez, 277 F.3d 73, 81–82 (1st Cir. 2002); and another circuit

13

has applied the enhancement to a mine operator, which is subject to close regulation as a condition of doing business, United States v. Turner, 102 F.3d 1350, 1360 (4th Cir. 1996). The First Circuit applied the enhancement to a federally licensed dairy farmer who participated in a conspiracy to adulterate milk, 18 U.S.C. § 371, and caused the delivery of adulterated milk into interstate commerce, 21 U.S.C. § 331(a), 18 U.S.C. § 2. Gonzalez-Alvarez, 277 F.3d at 76, 81–82. The district court had not applied the enhancement, but the court of appeals concluded that the enhancement was appropriate because "[t]he public was entitled to have dairy farmers . . . provide milk to processing plants compliant with all . . . regulations." Id. at 81–82. The First Circuit did not mention whether the dairy farmer exercised substantial professional discretion. The Fourth Circuit applied the enhancement to mine operators who falsely certified that miners had received safety training required by federal law. Turner, 102 F.3d at 1352, 1360. The court held that the mine operators "regularly exercised managerial discretion at the mine," and that "society had to publicly trust the [operators] to follow the mine safety laws during operation of the . . . mine." Id. at 1360.

These decisions of our sister circuits offer sparse guidance. In the light of the fact-sensitive nature of our inquiry, decisions about dairy farmers and mine operators do not provide authority for a rule about firearms dealers. Even Podhorn

14

offers little guidance because Podhorn did not raise the issue whether the enhancement may be applied to a firearms dealer, and the majority opinion did not discuss that issue.

We are persuaded by Judge Ripple's separate opinion that a federal firearms licensee does not occupy a "position of public trust" based on the three factors mentioned in section 3B1.3: professional judgment, discretion, and deference. The federal government does not review or warrant the "professional judgment" of a prospective licensee; to receive a license, an applicant must merely submit an application to the Bureau, supply fingerprints and a photograph, pay a fee, and pass a background check. 18 U.S.C. § 923. If the application meets the statutory requirements, the Bureau has no discretion to deny a license. Id. § 923(d)(1). A licensed dealer also exercises no discretion about how to comply with federal requirements about sales of firearms. The government requires the dealer to take certain steps before completing a transaction, keep certain records of transactions, and transact only in certain places and with certain people. Dealers may not sell firearms outside any of these limitations. Dealers are also afforded little, if any, "professional deference." U.S.S.G. § 3B1.3 cmt. n.1. Although dealers, as private business owners, do not have an immediate supervisor who oversees their work on a daily basis, dealers exercise no professional judgment about their compliance

15

with federal law. Firearms dealers instead must submit to periodic, indeed surprise, inspections and investigations by the Bureau and other law enforcement of their transactions and business practices. 18 U.S.C. § 923(g)(1)(B)(ii).

The district court used an erroneous legal standard when it applied the enhancement. The district court did not engage in any analysis about the discretion exercised by firearms dealers. The district court instead summarily concluded that the public "trusted" Louis "to be the first line of defense in preventing criminals from accessing dangerous weapons."

The government argues that Louis received substantial deference and was not supervised, but the record and governing regulations do not support this argument. The Bureau observed Louis committing the crimes of which he is convicted during an investigation that followed a periodic inspection; were it not for this close regulation and supervision, Louis's crime would likely have gone undetected. We cannot say that Louis occupied a position "characterized by . . . substantial discretionary judgment that is ordinarily given considerable deference." U.S.S.G. § 3B1.3 cmt. n.1. The district court erred when it enhanced Louis's sentence for abusing a position of trust.

## IV. CONCLUSION

Louis's conviction and the enhancement of his sentence on the basis of his

16

intent to sell Domino five additional firearms, <u>id.</u> § 2K2.1(b)(1)(A), are

**AFFIRMED**. Because the district court erred when it enhanced Louis's sentence

for abusing a position of public trust, <u>id.</u> § 3B1.3, Louis's sentence is **VACATED**

and this case is **REMANDED** for resentencing.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**