[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-12493
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 12, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:09-cr-20729-JEM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DANIEL STEPHEN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 12, 2011)

Before EDMONDSON, CARNES and KRAVITCH, Circuit Judges.

PER CURIAM:

Daniel Stephen appeals his conviction and 240-month sentence for

conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349.  Stephen, as the

sole corporate officer of First Loan Solution, Inc., sold tracts of land in northern

Florida.  He advertised the land primarily to members of the Haitian community in

South Florida and falsely informed the victims that First Loan Solution owned the

land.  Stephen hired the law firm of Estime-Thompson, P.A. to conduct real estate

closings.  Patricia De Pons, who managed Estime-Thompson's title operation,

conducted the fraudulent closings purporting to transfer title of land tracts from

First Loan Solution to the buyers.  She also provided buyers with fabricated,

unrecorded warranty deeds.[1]

Stephen was charged with one count of conspiracy to commit mail fraud in

violation of 18 U.S.C. §§ 1341 and 1349, and eighteen counts of substantive mail

fraud in violation of 18 U.S.C. §§ 1341 and 2.  He entered into a written plea

agreement with the government, in which he agreed to plead guilty to count one of

the indictment and the government agreed to seek dismissal of the remaining

eighteen counts.  In the plea agreement Stephen acknowledged that the district

court would consider the sentencing guidelines and that the court had "the

authority to impose any sentence within and up to the statutory maximum" of 20

---

[1]De Pons and Clotilde Jean, who managed the daily operations of First Loan Solution, were Stephen's co-defendants, but they are not parties in this appeal.  De Pons was sentenced at the same time as Stephen.

years. The government agreed to seek a reduction in Stephen's offense level based on his acceptance of responsibility, and the parties agreed to jointly recommend three enhancements to Stephen's base offense level: a 20-level increase under U.S.S.G. § 2B1.1(b)(1)(K) for a loss of more than $7,000,000 but less than $20,000,000; a 6-level increase under U.S.S.G. § 2B1.1(b)(2)(C) for 250 or more victims; and a 4-level increase under U.S.S.G. § 3B1.1(a) for Stephen's role as an organizer or leader of the criminal activity. Those were the only three sentencing guidelines enhancements that the plea agreement mentioned.

In addition to those three enhancements, the presentence investigation report recommended a 2-level increase under U.S.S.G. § 3B1.3 because Stephen "abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. The PSI also recommended a 2-level increase under U.S.S.G. § 2B1.1(b)(9)(C) because the offense involved the use of sophisticated means. Stephen's base offense level was 7, but with all of the enhancements the PSI set his adjusted base offense level at 41. With a 3-level downward adjustment for acceptance of responsibility, his total offense level was 38. The PSI assigned Stephen zero criminal history points and a criminal history of I, and his recommended guidelines range was 235 to 293 months. Because a statutory maximum of 20

years applied, however, the PSI set Stephen's guidelines range at 235 to 240 months.  See U.S.S.G. § 5G1.1(c)(1).

Stephen filed objections to the PSI based on, among other things, the recommended enhancements for abuse of a position of trust and for sophisticated means.  At the sentence hearing the district court questioned both sides about the facts related to those enhancements.  The court thereafter imposed a sentence of 240 months followed by three years of supervised release.  It later ordered $6,804,736.08 in restitution, based on the claims filed by victims.

Stephen contends that (1) the government breached the plea agreement by arguing in favor of an abuse of trust enhancement and seeking a sentence above the guidelines range that was indicated by the plea agreement; and (2) even if the government did not breach the plea agreement, it contains an unenforceable sentence appeal waiver.  He also contends that the district court erred by (1) applying the 2-level abuse of trust enhancement under U.S.S.G. § 3B1.3; (2) applying the 2-level sophisticated means enhancement under U.S.S.G. § 2B1.1(b)(9)(C); and (3) applying a 20-level enhancement based on its calculation the amount of the loss under U.S.S.G. § 2B1.1(b)(1).  Stephen asserts that he should be permitted to withdraw his guilty plea, or he should be re-sentenced by a different district court judge.

I.

The only argument Stephen makes that, if successful, would allow him to withdraw his guilty plea is his contention that the government breached the plea agreement. See United States v. Rewis, 969 F.2d 985, 988–89 (11th Cir. 1992) ("There are two remedies available when a plea agreement is breached: (1) remand the case for resentencing according to the terms of the agreement before a different judge, or (2) permit the withdrawal of the guilty plea."). Because Stephen did not argue to the district court that the government allegedly breached the plea agreement, we review only for plain error. United States v. Romano, 314 F.3d 1279, 1281 (11th Cir. 2002). "Before an error is subject to correction under the plain error rule, it must be plain under controlling precedent or in view of the unequivocally clear words of a statute or rule; it must have adversely affected the outcome of the proceedings; and it must be such that the failure to correct it would seriously affect the fairness, integrity or public reputation of judicial proceedings." United States v. Lett, 483 F.3d 782, 790 (11th Cir. 2007).

The government is bound to a material promise that induces a defendant to plead guilty. Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 499 (1971). "Whether the government violated the agreement is judged according to the defendant's reasonable understanding at the time he entered the plea." Rewis,

5

969 F.2d at 988. In the present case, although some of the government's statements at the sentence hearing could be construed as arguments in favor of imposing the abuse of trust enhancement, the government repeatedly emphasized that it intended to honor the plea agreement, and it never specifically asked the district court to impose the enhancement.

The district court asked counsel for both parties whether there was a factual dispute about Stephen's abuse of a position of trust with the victims of the fraudulent scheme. The court told Stephen's counsel that it did not "care about" the plea agreement and asked for an explanation of "why, factually," the abuse of trust enhancement was "not applicable." Stephen's arguments on that subject did not persuade the court, which concluded that the enhancement was "appropriate." The court stated that it intended to impose the enhancement despite the government's decision to "continue with [its] position as stated in the plea agreement." Thus, Stephen's substantial rights were not affected because the district court was going to impose the enhancement even though the government did not agree to it.

The government complied with its promise in the plea agreement to recommend a sentence "within the advisory sentencing guideline range produced by application of the Sentencing Guidelines." At the sentence hearing, the

6

government stated that in light of the district court's decision to set the guidelines range at 235 to 240 months, it recommended a sentence of 235 months, at the low end of that range. Counsel for Stephen acknowledged that there was not "much wiggle room between 235 and 240." Stephen's counsel also recognized that the parties had entered the plea agreement based on the understanding that the guidelines range would be between 151 and 188 months, which would be "hopefully satisfactory to the Court," but because the court was not satisfied with that guidelines range, counsel asked for a "variance down to 151 months." Just because the district court decided to impose a higher guidelines range does not mean that the government breached the plea agreement. In the plea agreement itself Stephen acknowledged that "the court ha[d] the authority to impose any sentence within and up to the statutory maximum" of twenty years. Stephen has not shown that the government breached the plea agreement, and he is not entitled to withdraw his guilty plea or to be resentenced by a different judge.

## II.

Having determined that the plea agreement was not breached, we now turn to the issue of whether Stephen waived his right to challenge his sentence. The plea agreement contained a sentence appeal waiver, which is enforceable if Stephen agreed to it knowingly and voluntarily. United States v. Bushert, 997

F.2d 1343, 1350 (11th Cir. 1993). To establish that Stephen waived his appeal rights knowingly and voluntarily, "[t]he government must show that either (1) the district court specifically questioned [Stephen] concerning the sentence appeal waiver during the Rule 11 colloquy, or (2) it is manifestly clear from the record that [Stephen] otherwise understood the full significance of the waiver." Id. at 1351.

As the government concedes, Stephen's sentence appeal waiver is not enforceable. The district court failed to question him about it during the plea colloquy, and it is not manifestly clear from the record that he otherwise understood its full significance. Because the waiver is unenforceable, we will consider the merits of Stephen's challenge to his sentence.

III.

Stephen first contends that the district court erred by applying a § 3B1.3 enhancement for abuse of a position of trust. When considering a district court's application of the sentencing guidelines, we review its findings of fact for clear error and its application of the guidelines to those facts de novo. United States v. Humber, 255 F.3d 1308, 1311 (11th Cir. 2001). The sentencing guidelines provide for a 2-level enhancement if "the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or

8

concealment of the offense." U.S.S.G. § 3B1.3. The § 3B1.3 commentary defines "[p]ublic or private trust'" as "a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference)." U.S.S.G. § 3B1.3 cmt. n.1. "The enhancement . . . requires that the offender occupy a position of trust in relation to the victim, not another party." United States v. Louis, 559 F.3d 1220, 1226 (11th Cir. 2009).

Because every instance of fraud involves an element of misplaced trust, "a sentencing court must be careful not to be overly broad in imposing the enhancement for abuse of a position of trust." United States v. Ghertler, 605 F.3d 1256, 1264 (11th Cir. 2010) (quotation marks omitted). The government must show "that the victim placed a special trust in the defendant beyond ordinary reliance on the defendant's integrity and honesty that underlies every fraud scenario." United States v. Williams, 527 F.3d 1235, 1250–51 (11th Cir. 2008); see also United States v. Mullens, 65 F.3d 1560, 1567 (11th Cir. 1995) (holding that district court erred by applying abuse of trust enhancement based on the defendant's exploitation of friendships he cultivated with investors by virtue of his membership in a country club).

The abuse of trust enhancement in the present case was based on only two

findings of fact by the district court: (1) Stephen was the sole corporate officer of First Loan Solution; and (2) Stephen, who is of Haitian descent, marketed to the Haitian community in South Florida. Both facts are true, but neither fact supports the district court's application of the abuse of trust enhancement.

Stephen's role as sole corporate officer at First Loan Solution meant that he had a fiduciary relationship with the company, but § 3B1.3 requires a showing that the defendant held a position of trust in relation to the victims. See Louis, 559 F.3d at 1226. "[T]he abuse of trust enhancement applies only where the *defendant has abused discretionary authority entrusted to the defendant by the victim*; arm's-length business relationships are not available for the application of this enhancement." United States v. Garrison, 133 F.3d 831, 839 (11th Cir. 1998) (quotation marks omitted). As a seller of land Stephen simply had a buyer-seller relationship with the victims, not a fiduciary relationship.

As for the national origin Stephen shared with the victims of his fraudulent scheme, at the sentence hearing one victim told the district court that Stephen and his co-defendant "did something very bad to the Haitian population." The witness explained: "He's Haitian, they were trusted with the money from the Haitian people." In its brief to this Court, however, the government does not argue that the victims placed special trust in Stephen because of their common Haitian

10

heritage, so that argument has been abandoned. See United States v. Campa, 529 F.3d 980, 989 (11th Cir. 2008) (arguments not made in a party's brief are abandoned). In any event, even if the victims were inclined to do business with Stephen because he was of Haitian descent, that would be more akin to a social relationship than a close personal or fiduciary relationship. See Mullens, 65 F.3d at 1567.

Although Stephen may have gained his victims' trust by lying to them about safely placing their money in an escrow account, his false promise does not establish that the victims placed any special trust in him beyond the ordinary reliance that underlies every fraud scenario. See Williams, 527 F.3d at 1250–51. The district court erred by applying the § 3B1.3 enhancement.

IV.

Stephen also contends that the district court erred by applying a sophisticated means enhancement. The sentencing guidelines provide for a two-level increase in the defendant's base offense level if "the offense . . . involved sophisticated means." U.S.S.G. § 2B1.1(b)(9)(C). The commentary describes "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense," including "[c]onduct such as hiding assets or transactions, or both, through the use of

11

fictitious entities, corporate shells, or offshore financial accounts." U.S.S.G. § 2B1.1, cmt. n.8(B). Every one of the defendant's individual actions does not have to be sophisticated; instead, it is enough if "the totality of the scheme was sophisticated." Ghertler, 605 F.3d at 1267.

The undisputed facts set forth in the PSI establish that Stephen's offense was more complex than a simple real estate transaction. Stephen arranged bus trips for prospective buyers to view vacant land that First Loan Solutions purportedly owned, hired the Estime-Thompson law firm to serve as closing and escrow agent, and sent letters to victims offering false explanations for closing delays and falsely reassuring the victims that their deposits were being held in an escrow account. Stephen's co-defendant De Pons conducted fraudulent closings and provided victims with fabricated, unrecorded warranty deeds. All of these actions were instrumental in the execution or continued concealment of the offense. They were intended to reassure the buyers that the transactions were legitimate and that their deposits were safe. The district court did not clearly err in finding that the offense involved the use of sophisticated means.

V.

Stephen contends that the district court erred by increasing his offense level 20 levels based on a loss amount of more than $7,000,000 but less than

12

$20,000,000. See U.S.S.G. § 2B1.1(b)(1)(K). He argues that at the restitution hearing, which was conducted after the sentence hearing, the actual amount of loss claimed by the victims was less than $7,000,000. Based on that amount of restitution, Stephen asserts that his offense level should be lower under § 2B1.1. See U.S.S.G. § 2B1.1(b)(1)(J) (providing for an 18-level increase for a loss amount over $2,500,000 but not more than $7,000,000).

Stephen failed to object to the loss amount in the PSI, so he admitted for sentencing purposes that his offense involved a loss amount of $10,600,000. See United States v. Wade, 458 F.3d 1273, 1277 (11th Cir. 2006) ("[A] failure to object to allegations of fact in a PSI admits those facts for sentencing purposes."). Not only that, but Stephen agreed in the plea agreement that a 20-level increase for a loss amount of more than $7,000,000 but less than $20,000,000 was appropriate. The district court did not err by sentencing him based on a loss amount that he had admitted and had agreed was applicable.

## VI.

Stephen failed to show that the government breached the plea agreement. Thus, we affirm his conviction. Because the district court erred by imposing an abuse of trust enhancement under U.S.S.G. § 3B1.3, however, we vacate Stephen's

sentence and remand for re-sentencing.[2]

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**

---

[2]Stephen also contends that the district court failed to satisfy the requirements of 18 U.S.C. § 3553(c)(1). Because we are remanding for resentencing, that issue is moot.