[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11460
Non-Argument Calendar
_____

D.C. Docket No. 0:17-cr-60225-BB-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MYRIAM ETIENNE,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 14, 2019)


Before WILLIAM PRYOR, GRANT and BLACK, Circuit Judges.

PER CURIAM:

Myriam Etienne was charged with knowingly and willfully embezzling, stealing, purloining, and converting to her own use Supplemental Security Income (SSI) benefits, in violation of 18 U.S.C. § 641. The SSI benefits were intended for Etienne's grandparents, and Etienne was their representative payee. Counts 1 through 45 charged Etienne with theft of government property for SSI benefits disbursed by the Social Security Administration (SSA) into a joint account on which Etienne was an authorized user for the benefit of Hermann Etienne between October 1, 2012 and June 1, 2016. Counts 46 through 90 charged Etienne with theft of government property of SSI benefits disbursed by the SSA into the joint account on which Etienne was an authorized user for the benefit of Genevieve Etienne between October 1, 2012 and June 1, 2016.

A jury convicted Etienne of all 90 counts of theft of government property, and she was sentenced to 41 months' imprisonment. Etienne appeals her sentence, asserting the district court erred in applying a two-level sentencing enhancement for abuse of trust under U.S.S.G. § 3B1.3. Etienne contends she did not occupy a position of public or private trust with respect to the victim in this case, the SSA. After review,[1] we agree that Etienne did not occupy a position of trust with respect to the SSA, and vacate and remand for resentencing.

_____

[1] We review for clear error a district court's factual determination a defendant abused a position of trust, but we review *de novo* the court's legal conclusion the defendant's conduct

2

## I.  BACKGROUND

On November 6, 2003, Etienne completed a Request to Be Selected as Payee for her grandfather Hermann Etienne in order to receive SSI benefits from the SSA on her grandfather's behalf.  Her Request stated that all payments were for her grandfather's current or future needs and she acknowledged she was required to submit an accounting report on how payments were used.  The Request also included an attestation that:

> I know that anyone who makes or causes to be made a false statement or representation of material fact relating to a payment under the Social Security Act commits a crime punishable under Federal law by fine, imprisonment or both.  I affirm that all information I have given in this document is true.

On October 20, 2004, Etienne submitted a Request to Be Selected as Payee for her grandmother, Genevieve Etienne, in order to receive SSI benefits from the SSA on her grandmother's behalf.   That Request included the same acknowledgements, statements, and attestations regarding the permitted use and purpose for the benefits as the Request Etienne submitted for her grandfather.

After Etienne became a representative payee for her grandparents, the SSA deposited her grandparents' SSI benefits into a bank account Etienne jointly shared with her grandparents.  In fact, Etienne's grandfather had already left the United

---

justified the abuse-of-trust enhancement.  *United States v. Garrison*, 133 F.3d 831, 837 (11th Cir. 1998).

States for Haiti at the time of her Request to Be Selected as Payee for him, and later passed away in Haiti in 2006. In April 2008, Etienne's grandmother left the United States for Haiti and passed away in 2009. Despite these departures and deaths, Etienne continued to receive her grandparents' monthly SSI benefits through June 1, 2016.

As representative payee for her grandparents, Etienne submitted Representative Payee Reports detailing her grandparents' expenses. In these Reports, Etienne made repeated representations to the SSA that her grandparents lived in her household for years after her grandparents left the United States and died. She also represented to the SSA that the benefits received into the account for her grandparents were used for their food, shelter, and other needs.

In reality, Etienne used the SSI benefits for her personal expenses, including her mortgage, payments on a BMW X6, and cash withdrawals in varying amounts. In 2016, auditors for the SSA Office of Inspector General's (OIG) Office of Audit were able to determine that Etienne's grandparents were either living in Haiti or deceased. OIG investigators interviewed Etienne four times between June 24, 2016 and September 28, 2017. During interviews Etienne provided false information regarding her grandparents' whereabouts and dates of death. Eventually, Etienne admitted she knew her grandparents were deceased and she had used their SSI benefits to provide for her personal expenses.

## II.  DISCUSSION

Section 3B1.3 provides: "If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase [the offense level] by 2 levels."  U.S.S.G. § 3B1.3.  The commentary to § 3B1.3 defines a "public or private trust" as a position "characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference)."  *Id.*, cmt. (n.1).  The commentary also provides examples of cases in which the enhancement does and does not apply:

> This adjustment, for example, applies in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination.  This adjustment does not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-described factors.

*Id.*

"The determination of whether a defendant occupied a position of trust is extremely fact sensitive."  *United States v. Louis*, 559 F.3d 1220, 1225 (11th Cir. 2009) (quotations omitted).  "Sentencing and reviewing courts must determine whether a defendant occupied a position of trust that justifies the § 3B1.3 upward adjustment by assessing the defendant's relationship to the victim of the crime" from the victim's perspective.  *United States v. Williams*, 527 F.3d 1235, 1250

5

(11th Cir. 2008); *United States v. Garrison*, 133 F.3d 831, 837 (11th Cir. 1998). "Therefore, the abuse-of-trust adjustment applies only where the *defendant has abused discretionary authority entrusted to the defendant by the victim*." *Williams*, 527 F.3d at 1250 (quotations omitted); *see also United States v. Ghertler*, 605 F.3d 1256, 1264 (11th Cir. 2010) ("A relationship of trust between the defendant and the victim is the *sine qua non* of the abuse-of-trust enhancement."); *Morris*, 286 F.3d at 1295-1300 (reversing enhancement where attorney participated in conspiracy to launder money but intended victims were not his clients); *United States v. Mills*, 138 F.3d 928, 941 (11th Cir.1998) (reversing enhancement because Medicare-funded care provider, as a matter of law, does not occupy position of trust *vis-a-vis* Medicare). "The enhancement . . . requires that the offender occupy a position of trust in relation to the victim, *not another party*." *Louis*, 559 F.3d at 1226 (emphasis added).

We have explained that, in the fraud context, § 3B1.3 has been recognized to apply in two situations: (1) where the defendant steals from his employer, using his position in the company to facilitate the offense, and (2) where the defendant is in a fiduciary, or other personal trust, relationship to the victim of the fraud, and the defendant takes advantage of the relationship to perpetrate or conceal the offense. *Garrison*, 133 F.3d at 837-38. We have cautioned there is a component of misplaced trust inherent in the concept of fraud, and, therefore, a sentencing court

must be careful not to be "overly broad" in imposing the abuse-of-trust enhancement or "the sentence of virtually every defendant who occupied any position of trust with anyone, victim or otherwise, would receive a [§] 3B1.3 enhancement." *Ghertler*, 605 F.3d at 1264. "Thus, for the abuse-of-trust adjustment to apply in the fraud context, there must be a showing that the victim placed a special trust in the defendant beyond ordinary reliance on the defendant's integrity and honesty that underlies every fraud scenario." *Williams*, 527 F.3d at 1250-51 (reversing enhancement where the government agency did not place "a special trust, akin to that of a fiduciary," in the defendant above her obligation to adhere to the terms and conditions for the grant); *Ghertler*, 605 F.3d at 1267 ("[The defendant] did not abuse the trust that [the victims] had placed in him to act on their behalf. Based on these facts, there is no basis for concluding that he is 'more culpable' than any common fraudster.").

The district court erred in imposing the two-level enhancement under § 3B1.3. Importantly, the SSA is the only victim in this case, as Etienne's grandparents are deceased.[2] When the relationship between Etienne and the SSA is assessed from the SSA's perspective, the SSA did not place a special trust, "akin to that of a fiduciary," in Etienne beyond the ordinary reliance on her integrity and

---

[2] We express no opinion on whether a representative payee would be eligible for the abuse-of-trust enhancement if the SSI claimant were alive and entitled to the benefit.

honesty that underlies every fraud scenario.  A representative payee does not occupy a "position of public of private trust" relative to the SSA based on the § 3B1.3 factors of professional judgment, discretion, and deference.  *See Louis*, 559 F.3d at 1227.

First, the SSA does not review the "professional judgment" of a representative payee.  To become a representative payee, Etienne requested to be selected as such, represented that she had never been convicted of a felony, and made attestations to use the payments only for the claimant's current or future needs.  To become a representative payee, she merely had to complete an application and the SSA had to determine the grandparents were not capable of handling their own finances.  *See id.* ("The federal government does not review or warrant the 'professional judgment' of a prospective licensee; to receive a license, an applicant must merely submit an application to the Bureau, supply fingerprints and a photograph, pay a fee, and pass a background check.")

Second, the fact SSA required Etienne to submit annual reports and answer an investigator's questions does not support the conclusion she occupied a position of trust "characterized by professional or managerial discretion" as to the SSA.  In *Garrison*, we held that, while the government may have been a victim in a Medicare fraud scheme, an abuse-of-trust adjustment was unjustified because the defendant did not occupy a sufficiently proximate position of trust relative to

8

Medicare.  133 F.3d at 841.  In so holding, we reasoned "statutory reporting requirements do not create a position of trust relative to a victim of the crime."  *Id.*; *see also Mills*, 138 F.3d 928, 941 (11th Cir.1998) (holding the defendants' sentences could not be upwardly adjusted under § 3B1.3 because lying to Medicare did not constitute a breach of public trust).

Instead, much like the Internal Revenue Service, the SSA requires annual reports and investigates suspicious activity precisely because the SSA does not enjoy a "relationship of trust" with the people reporting to it.  *See Williams*, 527 F.3d at 1251 ("The promise of veracity, often under penalty of perjury, underlies nearly every loan application, grant, or other financial transaction with the federal government.").  This Court has noted that imposing an abuse-of-trust enhancement in such a scenario is "so far reaching that it might cause virtually anyone who is commanded by statute to make an accurate report to the government to be subject to a Section 3B1.3 enhancement.  All taxpayers who file false tax returns, for example, might be included."  *See Garrison*, 133 F.3d at 840 (quotations omitted).  "It could not have been intended that § 3B1.3 apply in every case where the defendant receives pecuniary gain by lying to the government."  *Williams*, 527 F.3d at 1251.

Reversing the § 3B1.3 enhancement here better comports "with the policies motivating the development and application of the abuse-of-trust enhancement."

9

*See Ghertler*, 605 F.3d at 1266 (explaining people "who abuse authority entrusted to them by others are simply 'more culpable,' and thus deserving of harsher penalties"); *see also Garrison*, 133 F.3d at 839 n.18 (noting "position of public or private trust is a term of art, appropriating some of the aspect of the legal concept of a trustee or fiduciary," unlike the ordinary sense in which "a bank trusts its tellers not to steal from the till").  While the Government focuses on Etienne's lesser degree of supervision, unlike a physician's fraudulent Medicare claim or "a bank executive's fraudulent loan scheme," Etienne's offenses were not made difficult to detect by virtue of her posing as a representative payee.  *See Garrison*, 133 F3d at 839 n.18; *see also* § 3B1.3, cmt. (n.1).  Unlike "the criminal sexual abuse of a patient by a physician under the guise of an examination," the SSA did not make itself "particularly vulnerable by entrusting [Etienne] with substantial authority and discretion to act on [its] behalf," the SSA did not rely upon or defer to her, and Etienne's decision to submit fraudulent reports did not undermine faith in one's fellow man any more than an ordinary pickpocket or taxpayer who files a false tax return.  *See* § 3B1.3, cmt. (n.1); *Garrison*, 133 F.3d at 839 n.18.

"Based on these facts, there is no basis for concluding that [Etienne] is 'more culpable' than any common fraudster."  *See Ghertler*, 605 F.3d at 1267.  Accordingly, we vacate and remand for resentencing.

**VACATED AND REMANDED.**

10